187 So.2d 335 (1966)
PEOPLES GAS SYSTEM, INC., Petitioner,
v.
Edwin L. MASON, Jerry W. Carter and William T. Mayo, As Members of and Constituting the Florida Public Service Commission, Respondents.
No. 34691.
Supreme Court of Florida.
June 1, 1966.
*336 McClain, Thompson, Turbiville, White & Davis, J.A. McClain, Jr., Tampa, Scott, McCarthy, Preston & Steel and George W. Wright, Jr., Miami, for petitioner.
Lewis W. Petteway and James L. Graham, Jr., Tallahassee, for respondents.
O'CONNELL, Justice.
By certiorari to the Florida Public Service Commission, we have for review that commission's Order No. 3835 by which it purports to abrogate in part its earlier approval of a territorial service agreement. The essential facts are these: On September 9th, 1960, petitioner and the City Gas Company, both distributors of natural gas in Dade and Broward Counties, entered into a territorial service area agreement. This agreement provided that neither would extend its service across an agreed-upon line running east and west across Dade and Broward Counties into the territory reserved to the other by the agreement. On November 9, 1960, the commission approved this agreement, which had been jointly submitted for such approval by both parties thereto.
On May 7th, 1962, petitioner filed a complaint seeking specific performance of the agreement and an injunction against its *337 continued violation by City Gas. The alleged violation consisted of the acquisition by City Gas of gas distribution facilities in the City of Pompano Beach. The chancellor first dismissed the complaint on the ground that Pompano Beach did not fall within the area reserved to petitioner by the agreement. However, the District Court of Appeal, Third District, reversed in a decision published in Peoples Gas System, Inc. v. City Gas Co., 147 So.2d 334. The chancellor thereupon again dismissed the complaint, this time holding that it violated Ch. 542, F.S.A., the State anti-monopoly statute, and that the commission lacked statutory authority to validate such agreement by its approval. The District Court of Appeal, Third District, again reversed, Peoples Gas System, Inc. v. City Gas Co., Fla.App. 1964, 167 So.2d 577, and we denied certiorari and petition for rehearing. Fla., 182 So.2d 429.
On January 8, 1965, while the validity of the agreement was thus being litigated between the parties, the commission, on its own motion, entered its Order No. 3736 directing the petitioner and City Gas to show cause why the commission should not wholly withdraw or limit in part its approval of the territorial service agreement between them. The only ground offered in the show cause order for the proposed action was that of changed circumstances. At the hearing on the show cause order, petitioner argued: (1) that the commission lacked authority to modify its earlier order while litigation to determine its validity was still in progress; and (2) that the only changed circumstances were those resulting from the wilful violation of the agreement by City Gas and that such changes did not, therefore, constitute a legitimate ground for the proposed action.
On June 24, 1965, the commission, one member dissenting, entered its Order No. 3835, rescinding and withdrawing the approval previously given to the territorial service agreement "to the extent that it applies to the area lying within the City limits of Pompano Beach, Florida." It is important to note, however, that the commission's order was not based upon the ground offered in the show cause order  i.e., changed circumstances  but, rather, on the ground that the earlier order had exceeded the commission's authority. The following appears to be the significant language in the order:
"* * * the absence of express statutory authority to award service areas leaves us with only an implied power to do so, and it is founded primarily in the imminence of destructive competition between neighboring utilities. Patently, with such a basis for our authority, we should not approve an agreement which awards to a utility territory with respect to which there is no reasonably immediate possibility of duplicating service by one or the other of the parties to the agreement. In truth, what we call `territorial agreements' are more aptly described in most cases as a boundary agreement and the extent of the boundary line should bear a reasonable relationship to the area in which competition may be expected.
"In the case at hand we have such a boundary drawn across two counties, providing a line of demarcation beyond which neither utility may extend its facilities. While the contractual agreement between the parties went much farther and purported to secure to each company, inviolate from any competition by the other, all that part of the two counties on its side of the line, we do not think that we have the authority to grant our approval to this extent. Rather, our approval should be limited to the establishing of a line beyond which the utilities will not extend their service facilities, and the extent of such line should be limited to the area in which possible encroachment is threatened."
Any doubt that the commission acted on the sole ground that its earlier approval of the agreement was in excess of its proper authority is entirely dispelled by its brief and oral argument before us.
*338 Superficially, it might appear, as suggested by petitioner, that the decisions of the District Court, reported at 147 So.2d 334 and at 167 So.2d 577, and our opinion reported at 182 So.2d 429, were determinative of this cause. Study of the issues presented and decided in those opinions reveals, however, that the principal issues now presented were neither discussed nor decided in those cases. Further, it must be remembered that the commission was not a party to those proceedings.
Among the points presented by the petitioner, we settle on one question which is basic and decisive of this cause. It is simply whether the commission may, some four and one-half years after entry of an order approving a service area agreement, modify that order on the ground that it initially lacked the power to enter such an order. We find the answer to be in the negative, which makes answers to the other questions presented unnecessary.
The power of the commission to modify its orders must be either that given by statute or that which is inherent by reason of the nature of the agency and the functions it is empowered to perform. We find no specific statutory authority for the commission to reach back and modify an earlier order. Moreover, the rules of procedure adopted by the commission pursuant to Section 366.05(1), F.S.A., do not permit what the commission has here attempted. Rule 3.10-2.59 authorizes rehearing on petition filed within 15 days after service of an order. Rule 3.10-2.994 permits filing of extraordinary petitions for reconsideration by persons other than parties, and such petitions must be filed within 60 days of the order asked to be reconsidered. Neither of these rules is applicable here.
We go then to a consideration of the inherent power of the commission to reopen or modify a final order after it has become final by the passage of time. Some jurisdictions hold that in the absence of statutory authority, administrative agencies have no power to reopen or reconsider a final order. 73 A.L.R.2d 941, 946. Florida, however, is among those jurisdictions holding that such agencies do have inherent power to reconsider final orders which are still under their control. 73 A.L.R.2d 941, 943. However, the decisions of this Court clearly say that this inherent authority to modify is a limited one.
In State v. Seaboard Air Line Ry. Co., 1927, 93 Fla. 404, 111 So. 391, the question was whether the commission, as then constituted, could issue an order imposing several responsibility for performance of an earlier order which had imposed a joint responsibility. This Court, in holding that this amendment of the earlier order was of form only and within the commission's inherent power, said, 111 So. at page 392:
"The law is also well settled that the railroad commission, like a court, may of its own motion or by request correct or amend any order still under its control without notice and hearing to parties interested, provided such parties cannot suffer by reason of the correction or amendment, or if the matters corrected and amended were embraced in testimony taken at a previous hearing."
In Leonard Bros. Transfer & Storage Co. v. Douglass, 1947, 159 Fla. 510, 32 So.2d 156, this Court held that an order of the commission could not be considered as amending an earlier order. In doing so it repeated the above-quoted language from the Seaboard Air Line Ry. Co. case, supra, and then continued, 32 So.2d at page 158:
"Since at the time of the hearing on the second application the hearing on the first application had been concluded and all interested parties had accepted the Order 1978 and a final determination thereof and inasmuch as no interested party had sought to have same reconsidered by the Commission or reviewed by certiorari it will be considered that the hearing on the first application had become final; that we need only consider *339 the second application, the hearing thereon and Order 2000."
The effect of these decisions is that orders of administrative agencies must eventually pass out of the agency's control and become final and no longer subject to modification. This rule assures that there will be a terminal point in every proceeding at which the parties and the public may rely on a decision of such an agency as being final and dispositive of the rights and issues involved therein. This is, of course, the same rule that governs the finality of decisions of courts. It is as essential with respect to orders of administrative bodies as with those of courts.
We understand well the differences between the functions and orders of courts and those of administrative agencies, particularly those regulatory agencies which exercise a continuing supervisory jurisdiction over the persons and activities regulated. For one thing, although courts seldom, if ever, initiate proceedings on their own motion, regulatory agencies such as the commission often do so. Further, whereas courts usually decide cases on relatively fixed principles of law for the principal purpose of settling the rights of the parties litigant, the actions of administrative agencies are usually concerned with deciding issues according to a public interest that often changes with shifting circumstances and passage of time. Such considerations should warn us against a too doctrinaire analogy between courts and administrative agencies and also against inadvertently precluding agency-initiated action concerning the subject matter dealt with in an earlier order.
Nevertheless, we experience no qualms in holding that in entering the order under review the commission went far beyond any power it has to modify an order previously entered. The order here involved was not entered on rehearing or reconsideration as permitted by the commission's rules of procedure. As noted above, it was entered more than four years after the entry of the order which it purported to modify. Neither was it based on any change in circumstances or on any demonstrated public need or interest. True, the notice to show cause issued by the commission offered changed circumstances as the ground therefor. However, this ground was apparently abandoned. This is understandable because the only change in circumstances seems to have been that occasioned by City Gas acting in violation of the service area agreement and the order of the commission approving it.
The ground finally given by the commission for its last order was that it had exceeded its authority in entering the first order approving the agreement. But even this ground is not well explained or consistently applied, for the commission did not attempt to withdraw its approval entirely, but only withdrew approval of the agreement as it pertained to the area within the City of Pompano Beach.
In our earlier opinion holding that the commission had implied authority to approve such agreements, 182 So.2d 429, we relied heavily upon the fact that in Sections 366.03, 366.04, 366.05, 366.06(2) and 366.07, the legislature had given the commission broad powers to regulate the operation of the subject utilities. We have no doubt that such powers may, in proper instances, be exercised on the initiative of the commission. Nor can there be any doubt that the commission may withdraw or modify its approval of a service area agreement, or other order, in proper proceedings initiated by it, a party to the agreement, or even an interested member of the public. However, this power may only be exercised after proper notice and hearing, and upon a specific finding based on adequate proof that such modification or withdrawal of approval is necessary in the public interest because of changed conditions or other circumstances not present in the proceedings which led to the order being modified. This view accords requisite finality *340 to orders of the commission, while still affording the commission ample authority to act in the public's interest.
Order No. 3051, by which the commission initially approved the agreement, contained an express finding that the agreement was in the public interest. It also contained an implied, if not expressed, holding that the commission had the authority to approve it. Then, more than four years later, the commission sought to change its mind and find that it did not have the authority to approve the agreement and that the agreement went beyond what was required by the public interest. This kind of second-guessing can not be sustained. We emphasize that the order under review contains no finding that the public interest required the partial abrogation of the prior approval of the agreement.
For the reasons written, we issue the writ and quash the commission's Order No. 3835.
It is so ordered.
THORNAL, C.J., and THOMAS and CALDWELL, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
In the earlier case, City Gas Co. v. Peoples Gas System, Inc., Fla., 182 So.2d 429, it appeared to me after a review of the statute and applicable court decisions there was no statutory authority in the Florida Public Service Commission to prescribe territorial areas in which particular gas companies would furnish service to consumers to the exclusion of other gas companies. In this case it appears the Commission agrees. Moreover, despite conclusions in the foregoing opinion to the contrary, it is apparent the Commission arrived at its decision after factually reviewing the needs of the public in the territory affected and concluded territorial restriction affecting competition among the gas companies was not in the public interest.