**Complaint of TROPICAL COACH LINES, Inc.
v. AMERICAN SIGHTSEEING TOURS, Inc.**
Docket No. 70308-CCB, Order No. 9399-A.
Florida Public Service Commission.
March 9, 1972.

Richard B. Austin and Samuel Ullman, both of Miami, for Tropical Coach Lines, Inc.

Phillip Schiff and Murray A. Dubbin, both of Miami, for American Sightseeing Tours, Inc.

Chairman JESS YARBOROUGH, Commissioners WILLIAM T. MAYO and WILLIAM H. BEVIS participated in the disposition of this matter.

BY THE COMMISSION.

*Order on remand from Supreme Court:* This cause is before the commission pursuant to an order of the Supreme Court of Florida of January 26, 1972, in case no. 41,259, on petition for writ of certiorari, which said order remands the cause to this commission requesting the reasoning of this commission for the entry of its order no. 9399, and requests the return of this file to the court within 45 days from date of the court's order.

Pursuant to the directive of the court, the commission respectfully submits the following reasoning in support of its order no. 9399.

This proceeding arose from a complaint filed on July 16, 1970 by one motor carrier, namely, Tropical Coach Lines, Inc., hereinafter referred to as Tropical, against a competitor motor carrier, namely, American Sightseeing Tours, Inc., hereinafter referred to as American or respondent, whereby Tropical charged American with transporting passengers unlawfully and contrary to the provisions of its authority contained in its certificate no. L-50 through the movement of passengers from Miami to various horse racing tracks in Dade and Broward counties.

After the filing of the complaint in the above proceeding, the respondent filed its motion to dismiss asserting several grounds, including the grounds that —

> "the operation and activity by the respondent is completely legal and proper,"

which motion was denied by the commission (order no. 9122, dated September 21, 1970) when this commission held —

> "after reviewing the substance of the complaint, we find that there are sufficient grounds in the complaint to warrant further public hearings in this matter."

Thereafter, a public hearing was held before a hearing examiner on November 23, 1970, which resulted in a 24-page transcript. All pertinent facts were stipulated to by the parties pursuant to rule 25-2.65 and, in fact, the only objection raised was that of the respondent to the examiner's taking official notice of testimony adduced during the course of a prior proceeding, namely, docket nos. 8710-CCB and 8725-CCB. Notwithstanding said objection, the examiner proceeded to take official notice of the contents of

such transcript, contrary to the rules of this commission, as more fully discussed hereinafter.

Upon exceptions duly filed by the respondent to the examiner's recommended order and a full review of the entire proceeding, this commission found that American Sightseeing Tours, Inc., in transporting passengers from Miami to Tropical Park, Hialeah, and Gulf Stream horse tracks, was operating lawfully and within the authority contained in its certificate no. L-50. Accordingly, we dismissed the complaint by order no. 9399, entered on March 24, 1971.

The pertinent facts are simple and clear, as is the applicable law —

(1) American is the owner and holder of certificate of public convenience and necessity no. L-50 issued by the commission which authorizes, amongst other transportation authority, the following —

"Sporting events authority:

Transportation of *passengers,* over irregular routes, From points in Dade County, Florida, to sites of sporting events in Florida, and return.

Such transportation is hereby restricted against charter service . . ."

(2) American became owner of certificate no. L-50 in accordance with the provisions of the Florida Statutes (§323.041, F. S.) in the normal and regular procedures of this commission and without objection by Tropical (order no. 7824, docket no. 9140-CCB, entered on February 9, 1968). There has been no suggestion that said ownership came about in any other manner than as provided by law, nor has such ever been an issue before this commission.

(3) There is no statutory definition of the words "sporting events" nor has this commission ever promulgated a rule or regulation making such a definition, addressing itself instead to each application for such authority on its own merit and its own fact situation as the same relates to conditions, restrictions and limitations necessary in the public interest.

(4) A horse race is a sporting event under all ordinary, customary and normal definitions of the term and, in fact, this was stipulated to and was a part of the examiner's findings and recommendations (Tr. 46, 62).

(5) §323.03(4), Florida Statutes, provides —

(4) CONTENTS OF CERTIFICATE. — Any certificate of convenience and necessity issued under the provisions of this section shall contain among other things the following:

(a) The name of the grantee.

(b) The public highway or highways over which, in the fixed termini, if any, between which the grantee is permitted to operate.

(c) The kind of transportation, whether passenger or freight, or both, in which the grantee is permitted to engage, together with a statement of the exact routes, terminals or territory to be served.

(d) *Such additional terms, conditions, provisions and limitations as the commission shall deem necessary or proper in the public interest* or in the interest of transportation facilities already existing on the route or routes or in the territory to be served. (Italics added.)

(6) In view of the above, it is clear that American was operating lawfully, and not beyond the authority contained in its certificate of public convenience and necessity, which set forth its entire rights as well as any restriction therein.

It is further clear that Tropical, in the filing of this complaint, was attempting to reopen and amend order no. 7605-A, entered by this commission on July 17, 1967, which order contained the grant of authority contained in American's certificate no. L-50, the pertinent portions of which are described hereinabove.

Order no. 7605-A resulted from proceedings before this commission in docket no. 8710-CCB, which was an application of Wylly's Sportsman, Inc., and docket no. 8725-CCB, which was an application of Grayline Sightseeing Tours, Inc. The two applications were consolidated for hearing purposes and in the proceedings each applicant supported the application of the other. Wylly's Sportsman, Inc. was the predecessor in title to American Sightseeing Tours, Inc. as to certificate no. L-50. Grayline Sightseeing Tours, Inc. is the parent corporation of Tropical Coach Lines, Inc., which is the complainant herein. In those proceedings, there were three protestants, namely, Turfway Lines, Inc., Tamiami Trail Tours, Inc., and the Greyhound Corporation, Southern Greyhound Lines Division, the latter now being a sister corporation to American.

During the taking of testimony in those proceedings, a then officer of Wylly's made statements in the record relating to its proposed method of operation if "sporting events authority" were granted.

The commission did not see fit to incorporate the language of Wylly's officer in the entry of its order no. 7605-A. Additionally, none of the parties to that proceeding saw fit to request in any manner the insertion of such words by way of restriction or limita-

tion or condition of the authority therein granted to Wylly's. The proceedings were thoroughly litigated, taken to the Supreme Court on petition by one of the protestants (Turfway Lines, Inc.), where certiorari was denied. Turfway Lines, Inc. v. Mayo, 214 So.2d 482 (Fla. 1968).

The examiner in the pending proceeding under docket no. 7308-CCB took official notice of the statements made by Wylly's officer. However, the taking of such official notice was improper and contrary to the provisions of commission rule 25-2.111, which provides as follows —

> *Judicial notice.* — The commission will take judicial notice of such matters as may be judicially noticed by the circuit court and the practice with reference thereto shall be the same before the commission as before the court. *In addition the commission will take judicial notice of its own decisions, but not of the facts on which the decision was based.* (Italics added.)

Additionally, commission rule 25-2.109 prohibits the use of evidence taken at a previous hearing before the commission or an examiner without a stipulation of the parties. There was, of course, in this instance, no such stipulation but on the other hand, an objection by American to the consideration of such former testimony.

The time has long expired whereby order no. 7605-A can be reopened for additional amendment or modification if grounds for such were shown to exist, which this commission does not find. Orders of the commission must eventually pass out of our control and become final and no longer subject to modification. Peoples Gas System, Inc. v. Mason, 187 So.2d 335 (Fla. 1966). Stated simply, there must be a terminal point in every proceeding at which time a certificate holder may rely upon a decision of this commission as being final and dispositive of the rights and issues therein.

On the basis of the foregoing, we conclude that the operation and activity of the respondent is completely legal and proper and the complaint filed by Tropical is without merit and should be denied.

It is therefore ordered that each and every finding herein be and the same is hereby approved in all respects.

Commissioner BEVIS, dissenting.

I must respectfully dissent from the majority opinion for the reasons cited hereinafter.

The facts in this matter are relatively simple and involve an interpretation of the language in American's certificate no. L-50, to wit: ". . . from points in Dade County, Florida, to sites of *sport-*

*ing events* in Florida, and return." (Italics added.) By way of background, Wylly's Sportsman, Inc. (Wylly's) applied for, among other things, authority to transport passengers from points in Dade County to sites of sporting events in Florida and return. During the course of the hearing on this application, the applicant, in answer to a request to interpret the term "sporting events," stated that the term "sporting events" specifically *excluded* dog and horse race tracks, and Jai Alai frontons. This is evidenced by the following testimony adduced at that hearing —

Q. (to the applicant) What is your definition of a sporting event?

A. (by applicant) Football game, baseball game, prize fight, soccer game, basketball game.

\* \* \*

Q. Let me ask you this. Does the term sporting event include everything from a turkey shoot to a bull fight?

A. It includes any sporting event that we might choose *other than a dog track, a horse track, a jai alai game, or harness racing* . . . (Italics added.)

The application was subsequently granted by the commission by order no. 7605-A, dated June 23, 1967, and such authority was incorporated into Wylly's certificate no. L-50. For some reason, which is not in the record but presumedly through oversight, the commission did not define the term sporting events in certificate no. L-50, but it is apparent that all parties as well as the commission relied upon the representation made by the applicant at the hearing. (For that matter, reference to sporting events authority was completely omitted when order no. 7605 was entered; therefore, this necessitated the entry of order no. 7605-A to cure this defect.) While rule 25-2.111 is cited by the majority as a prohibition against considering the above quoted testimony, the commission may waive any of its rules and the Supreme Court has so held. See Van Gorp Van Service, Inc. v. Mayo, 207 So.2d 425 (Fla. 1968). This is particularly true, as well as necessary, when the interpretation of some particular language in a certificate is at issue. Only the record can clearly resolve any ambiguities which may surround certain language in a carrier's operating authority, and for this reason, it is necessary to consider the above quoted testimony in order to determine precisely what American may or may not do under its certificate no. L-50. Moreover, the rules of evidence permit the introduction of the prior transcript of record into evidence through means other than a request to have the commission take judicial notice of same, as was done in this proceeding.

Certificate no. L-50 was acquired by American Sightseeing Tours, Inc. (American) on February 5, 1968 (order no. 7824, docket no. 9140-CCB). Some two years later in January, 1970, American filed for authority under §323.03, Florida Statutes, to transport passengers from Miami to race tracks in Dade and Broward counties. This application (see docket no. 70021-CCB) was subsequently withdrawn and American then began to transport passengers to race tracks in Dade and Broward counties. As the basis for conducting these operations, American alleged it held such authority since the definition of "sporting events" included, among other things, race tracks. Tropical then filed a complaint, which was ultimately dismissed by the commission by order no. 9399 on March 24, 1971.

It is my opinion that Tropical's complaint that American was operating illegally was meritorius and should not have been dismissed. To dismiss the complaint and approve of the actions of American amounts, very simply, to granting additional authority to American without the requisite notice, hearing, and proving of public convenience and necessity as required by §323.03, Florida Statutes. In short, we have authorized American to conduct operations it has not heretofore had authority to conduct without it having to comply with the requirements of chapter 323, Florida Statutes.

My conclusions are buttressed by the undisputable facts in this proceeding, to wit — (1) the restriction by the certificate holder itself against the operations which it is now performing when it applied for the original authority, and (2) the actual conduct of the parties. By this I mean that the original certificate holder (Wylly's) and the present certificate holder (American) apparently did not transport passengers to race tracks for a period of almost two and one-half years after the issuance of the authority obviously because they were aware of the restrictive interpretation placed on the term "sporting events" by the original holder. Moreover, American applied for the authority which it is now conducting presumedly on the basis that it did not hold authority to transport passengers from Miami to race tracks in Dade and Broward counties. The inescapable conclusion is that the action by the majority of the commission grants additional authority to American without meeting the requirements of the law.

I would reconsider the order dismissing the complaint, order American to cease and desist transporting passengers from Miami to Hialeah, Tropical, and Gulfstream horse race tracks, modify certificate no. L-50 in line with the discussion herein, and require it to file an application under §323.03, Florida Statutes, if it wishes to provide the transportation in question.