QUESTIONS: 1. Are the fuel adjustment clauses of Florida Power Corporation and Gulf Power Company legitimate charges to be borne by the ratepayers of these companies, as they originated without public hearing and are not set out in Florida Statutes or Public Service Commission Rules? 2. Can the Public Service Commission require that all revenue generated from the fuel adjustment charge that is proven to be in excess of the amount the companies are expending for increases in fuel cost be refunded proportionately to all customers? 3. Can the Public Service Commission require regulated utilities to establish escrow accounts wherein any and all windfall profits accrued as a result of escalated fuel adjustment charges can be placed subject to refund to the customer?
SUMMARY: Fuel adjustment charges of Florida Power Corporation and Gulf Power Company imposed pursuant to Docket Nos. 6013-EU and 6014-EU should not have been allowed without public hearing procedures provided by statute. However, such automatic fuel adjustment clauses, imposed for more than fourteen years without challenge, may only be rescinded by subsequent modification order promulgated after a duly noticed public hearing. There is no statutory authority for proportionate refund of fuel adjustment charges imposed under such orders, nor is there any such authority for the establishment by the utilities of an escrow fund for restitution of that portion of the approved rate which may be allocated to the automatic fuel adjustment clause. The proper procedure for the commission to follow in the event that it determines that the present fuel adjustment clauses give rise to excessive profits would be modification, after notice and hearing, of its earlier order establishing the subject fuel adjustment clauses. Orders #2890 and #2891 were issued by the Railroad and Public Utilities Commission on March 25, 1960. The orders revised a prior formal order, styled an Order Fixing Rates and Charges, issued August 22, 1957. In Order #2515, Docket #5098-EU, the commission authorized use of a fuel adjustment clause by Florida Power and Light Corporation, "only for temporary application pending full investigation of similar clauses of all other electric utilities." Subsequently, the commission promulgated Orders #2890 and #2891, styling each as an order revising fuel adjustment clauses. These orders recited that after a detailed investigation had been instituted and completed by the commission, and after careful study and consideration, a new fuel adjustment clause formula would thereafter be applied. On March 29, 1960, the commission issued Order #2895, Docket #6013-EU, styled In re: Florida Power Corporation — Revision of Fuel Adjustment Clause, and titled "Amended Order Revising Fuel Adjustment Clause." This amended order set out "steps [that] should be followed in making realistic, fair and equitable fuel adjustment," and amended certain tariffs in accordance with its provisions. Although the order purports to be an amendment, it operates as a revision of prior commission orders. The initial issue to be treated in answering your first question is, therefore, whether a public hearing was necessary before the commission revised its prior order. In the event that the Public Service Commission finds that it is necessary to adjust rates imposed by any public utility company, the commission is required by statute to order and hold a public hearing, giving notice to the public and to the utility company. Section 366.06(3), F.S. This requirement in implied in s. 366.07, F.S., and is a mandate to the extent that "rights, duties, privileges or immunities" are determined in such a hearing. Section 120.22, F.S. As to whether a public hearing is required for the modification of a prior order, the question would turn on whether affected parties might "suffer" as a result of the modification. In State ex rel. Burr v. Seaboard Airline Ry. Co.,111 So. 391, 392 (1927), the Florida Supreme Court observed: The law is well settled that the railroad commission, like a court, may of its own motion or by request correct or amend any order still under its control without notice and hearing to parties interested, provided such parties cannot suffer by reason of the correction or amendment, or if the matter corrected and amended were embraced in testimony taken at a previous hearing. (Emphasis supplied.) In the original order under consideration here, the commission expressly acknowledged that it would further consider the question of the application of a fuel adjustment clause. Proceeding on the assumption that the commission retained control over that subject matter of the order, within the meaning of the Burr rule, the question is whether subsequent modification of the fuel adjustment clause resulted in a situation under which either party, the utility company or its consumers, suffered by reason of the modification; or, alternatively, whether the modification resulted solely from testimony and evidence taken at the previous hearing. If no party could suffer by reason of correction or amendment, or if the fuel adjustment clause formula set out in the amended order referred to above was the result of testimony and evidence presented at a prior hearing, then the Burr rule would indicate that such a modification could be ordered without a new public hearing. In this case, it does not appear that either of these conditions is met. In Burr, the Supreme Court explained that the first provision of the rule allowed for corrections in form rather than substance. See 111 So.2d at 392. This clearly implies that substantive modifications are allowable only if based on testimony and evidence presented at a prior hearing. Orders #2890 and #2891 indicate clearly that their modifications were based on information revealed in subsequent investigations. Therefore, notice and hearing should have been provided. This conclusion is supported by a subsequent opinion of the Supreme Court entered more than six years after the subject orders. In Peoples Gas System, Inc. v. Mason, 187 So.2d 335 (Fla. 1966), the court indicated that the Burr rule should be limited to allow modifications only on motion for rehearing or reconsideration. The court had before it a commission order purporting to modify an order entered four and one-half years earlier. At187 So.2d, p. 339, the court stated:
[T]he commission went far beyond any power it has to modify an order previously entered. The order here involved was not entered on rehearing or reconsideration as permitted by the commission's rules of procedure. The court acknowledged that the Public Service Commission has broad statutory authority to regulate utilities subject to its control, and that in proceedings initiated by an interested party, by a member of the public, or upon its own motion, the commission could withdraw or modify its order. But the court added the following important caveat: However, this power may only be exercised after proper notice and hearing, and upon a specific finding based on adequate proof that such modification or withdrawal of approval is necessary in the public interest because of changed conditions or other circumstances not present in the proceedings which led to the order being modified. (Emphasis supplied.) Both the Burr case and the Peoples Gas System, Inc. case require public hearings in order for the commission to make substantive revisions such as those appearing in Orders #2890 and #2891. However, the fact that the commission failed to provide necessary public hearings as an incident to substantive modification of its previous orders is not determinative of the answer to your first question for there is an overriding consideration: The effect of a lapse of approximately fourteen years without challenge having been made to the legitimacy of the fuel adjustment clause. The procedure available for challenge to a commission order in 1960 was essentially the same as it is now: An aggrieved party could petition the Florida Supreme Court for a writ of certiorari. In 1960, the petitioner had sixty days in which to file. Section 350.641, F.S. 1959. Judicial review of a commission order would be: . . . limited to a determination whether the order is illegal as a matter of law, or was made without observing statutory provisions governing procedure, or whether in its operation the order will violate organic or fundamental rights . . . . Fogarty Bros. Transfer Inc. v. Boyd,109 So.2d 883, 890 (Fla. 1959). The commission issued two orders and an amendment without complying with required procedures. However, the proper vehicle for asserting a challenge to the orders was a petition for writ of certiorari. The question remains as to the effect of allowing these orders and the amendment to stand unchallenged. This question was answered by the Florida Supreme Court in Peoples Gas System, Inc. v. Mason, supra, where the court stated at 187 So.2d 338: Among the points presented by the petitioner, we settle on one question which is basic and decisive of this cause. It is simply whether the commission may, some four and onehalf years after entry of an order approving a service area agreement, modify that order on the ground that it initially lacked the power to enter such an order. We find the answer to be in the negative . . . . (Emphasis supplied.) Here, as in the Peoples Gas System, Inc. case, the time for review by petition for writ of certiorari has long since passed. There only remains the possibility of the commission, on its own motion, modifying its previous orders, and this possibility has been sharply limited by the Peoples Gas System decision. There the court relied upon two cases. One was the Burr case cited above, which the court treated as authority for amendments and corrections as to the form of final orders. The other case was Leonard Bros. Transfer Storage Co. v. Douglass,32 So.2d 156(Fla. 1947), which indicated that orders not reviewed by certiorari would become final. The court then concluded: The effect of these decisions is that orders of administrative agencies must eventually pass out of the agency's control and become final and no longer subject to modification. This rule assures that there will be a terminal point in every proceeding at which the parties and the public may rely on a decision of such an agency as being final and dispositive of the rights and issues involved therein. This is, of course, the same rule that governs the finality of the decisions of courts. Peoples Gas System, supra, 339. Therefore, I conclude that even though Commission Orders #2890 and #2891 were promulgated without benefit of a required public hearing, these orders and their amendment have, by virtue of the lapse of fourteen years without challenge, become final orders of the commission, and rates charged thereunder are legitimate. However, it is also my opinion that these orders are subject to modification by the commission on appropriate grounds. In Peoples Gas System, the court cautioned against a doctrinaire approach to the analogy between courts and administrative agencies in according finality to administrative decisions, and concluded at 187 So.2d 339: . . . [T]his power may only be exercised after proper notice and hearing, and upon a specific finding based on adequate proof that such modification or withdrawal of approval is necessary in the public interest because of changed conditions or other circumstances not present in the proceedings which led to the order being modified. This view accords requisite finality to orders of the commission while still affording the commission ample authority to act in the public's interest. (Emphasis supplied.) I, therefore, conclude that the Public Service Commission could, after a public hearing, and upon a showing of changed conditions or other circumstances, modify its prior orders revising the fuel adjustment clauses. Your second question asks whether the commission can order all excess revenue generated by application of a fuel adjustment clause to be proportionately refunded to affected consumers. In this regard, it is necessary to observe that, as a general principle, the Public Service Commission has only those powers expressly or impliedly conferred by statute. Any reasonable doubt as to the existence of a power of the commission is resolved against the commission. City of Cape Coral v. G.A.C. Utilities of Florida, 281 So.2d 493 (Fla. 1973); City of West Palm Beach v. P.S.C., 224 So.2d 322 (Fla. 1969). The commission's power to adjust rates charged by public utilities is set out in the following statutory sections: 366.06 Rates; procedure for fixing and changing. — * * * * * (3) Whenever the commission shall find, upon request made or upon its own motion, that the rates demanded, charged or collected by any public utility company for public utility service, or that the rules, regulations or practices of any public utility company affecting such rates are unjust, unreasonable, unjustly discriminatory, or in any wise in violation of law, or that such rates are insufficient to yield reasonable compensation for the services rendered, or that such service is inadequate or cannot be obtained, the commission shall order and hold a public hearing, giving notice to the public and to the utility company, and shall thereafter determine just and reasonable rates to be thereafter charged for such service and to promulgate rules and regulations affecting equipment, facilities and service to be thereafter installed, furnished, and used . . . . 366.07 Rates; adjustment. — Whenever the commission, after public hearing either upon its own motion or upon complaint, shall find the rates, rentals, charges or classifications, or any of them, proposed, demanded, observed, charged or collected by any public utility for any service, or in connection therewith, or the rules, regulations, measurements, practices, or contracts, or any of them, relating thereto, are unjust, unreasonable, insufficient, or unjustly discriminatory or preferential, or in any wise in violation of law, or any service is inadequate or cannot be obtained, the commission shall determine and by order fix the fair and reasonable rates, rentals, charges or classifications, and reasonable rules, regulations, measurements, practices, contracts or service, to be imposed, observed, furnished or followed in the future. In City of Miami v. P.S.C., 208 So.2d 249 (Fla. 1968), the Supreme Court was confronted with the argument that a commission rate reduction order should be applied retroactively. The court disagreed, stating at page 259: "An examination of pertinent statutes leads us to conclude that the Commission would have no authority to make retroactive ratemaking orders." In the City of Miami case, the court noted that statutory authority to fix and determine a just and reasonable rate was only prospective, and quoted the United States Supreme Court in Public Utilities Commission of Ohio v. United Fuel Gas Co., 317 U.S. 456, 464
(1943), which had before it an Ohio statute similar to the Florida statute under consideration: The statute in terms thus gives the Commission power to prescribe such rates prospectively only. If, after notice and hearing, the Commission finds rates to be unlawful, it can then fix the just and reasonable rates "to be thereafter" charged. The establishment of new rates must be preceded by a finding that the old rates are unjust and unreasonable, and the new rates are prospective as of the date they are fixed. Accordingly, your second question must be answered in the negative. If the fuel adjustment clauses are generating excess revenue, then under statutory procedures for rate adjustment the commission, on its own motion or on complaint, shall hold public hearings and "shall thereafter determine just and reasonable rates to be thereafter charged for such service" and establish by order such rates and practices as the commission deems fair and reasonable to be imposed "in the future." Sections366.06(3) and 366.07, F.S. (Emphasis supplied.) I, therefore, conclude that the commission may prevent excess revenues from being generated by the fuel adjustment clauses, not by ordering proportionate refunds more than a decade after the fact, but by ordering application of an equitable fuel adjustment charge to be imposed prospectively. The answer to your third question is controlled by my answer to your second question. Inasmuch as it is my opinion that the
commission possesses powers of prospective application only, your third question must be answered in the negative. Although s.366.06(4) F.S. (1974 Supp.), contemplates measures similar to those described in your third question, there does not seem to be any way in which a fair interpretation of that section, or any other statutory provision, could be said to authorize the commission to require escrow accounts for keeping "windfall profits" resulting from escalated fuel adjustment charges. As indicated above, proper procedure for the commission to follow in the event that it determines present fuel adjustment clauses to give rise to excessive profits would be modification, after notice and hearing, of its earlier order establishing the subject fuel adjustment clauses.