DAVIS, Judge.
Appellant, Kleyn B. Russell, appeals a final order of the Department of Business and Professional Regulation, Board of Dentistry (Board). Finding no error in the Board’s denial of appellant’s motion to set aside a previously entered final order, we affirm.
Appellant was a licensed dentist practicing in Crystal Beach, Florida. During May through August 1990, he was asked by a laser surgeon, Dr. Massad, to administer trigeminal facial nerve blocks to a patient Mas-sad was treating for port wine stains (heman-giomas) about the face. The purpose of the nerve blocks was to alleviate discomfort during laser surgery. The patient, B.M., was three years old and weighed 34 pounds at the time of the treatment.
Three facial nerve blocks were administered by appellant on three different occasions. Shortly after the third nerve block was administered, the child experienced respiratory distress and seizures, lapsed into cardiac arrest, and was transported to a local hospital by ambulance. Tragically, B.M. died three days later, on August 25, 1990, due to anoxic encephalopathy as a result of cardiac arrest which was triggered by lidocaine toxicity. In layman’s terms, the child received an overdose of nerve block and, as a result, sustained a cardiac arrest which deprived her brain of oxygen.
An administrative complaint was filed against the appellant, alleging that he failed to meet the minimum standard of care by failing to comprehend that special calculations are required when giving anesthetics to children, and by administering, on three occasions, an amount of anesthesia which exceeded the maximum dosage recommended by the manufacturer. The administrative complaint also alleged a failure to maintain adequate written records, a violation of section 466.028(l)(m), Florida Statutes.
The cause was referred to the Division of Administrative Hearings for an administrative hearing, following which, the hearing officer issued a recommended order finding, by clear and convincing evidence, that appel *119 lant had practiced dentistry at a level below the prevailing standard of care and that appellant failed to maintain proper records as required by statute. After noting that appellant had been the subject of prior disciplinary action by the Board, the hearing officer recommended that appellant be suspended from the practice of dentistry for 5 years and be allowed to resume practice only after successful completion of certain education courses.
With limited exceptions not material to the outcome of this case, the Board adopted the findings of fact and conclusions of law made in the recommended order, but rejected the recommended penalty and entered a final order revoking appellant’s license. No appeal was taken from that order. Specifically, the Board found that there was “competent substantial evidence to support the Hearing Officer’s determination that on the three specified dates” Respondent administered the anesthetic “in an amount that exceeded the manufacturer’s maximum recommended dosage.” The Board also expressly found competent substantial evidence to support the Hearing Officer’s determination that Russell “failed to recognize that special calculations were required when administering local anesthetic to children.” The Board did not reject the Hearing Officer’s conclusion that Russell had admitted his failure to comprehend the correct amount of anesthetic that could safely be administered. The Board merely rephrased this paragraph to make it clear that the admission was not made at the time he was physically in the process of administering the anesthetic. The Board also found competent substantial evidence to support the determinations that Russell failed to maintain appropriate records and failed to properly diagnose and treat B.M. after she began to exhibit signs of the respiratory depression which resulted in her death.
Several months later, appellant moved to set aside the final order or, in the alternative, for a new hearing on the ground of newly-discovered evidence, i.e., evidence regarding a manufacturer’s recall of certain batches of ASTRA Xylocaine. After hearing arguments of counsel, the Board issued a final order denying the Motion to Set Aside. The Board determined that it was without jurisdiction to revisit appellant’s case and noted that it found appellant’s arguments unpersuasive.
It is true that there are some cases in which an agency may exercise its inherent authority to reopen a closed case when there is a change in circumstances or a demonstrated public need or interest. See, e.g., Mann v. Dep’t of Professional Regulation, Bd. of Dentistry, 585 So.2d 1059 (Fla. 1st DCA 1991). This, however, is clearly not such a case. Therefore, the Board correctly determined that it lacked jurisdiction to revisit this decision, in the absence of a material change in circumstances or demonstrated public need.
In Peoples Gas System, Inc. v. Mason, 187 So.2d 335 (Fla.1966), the supreme court observed that Florida “is among those jurisdictions holding that such agencies do have inherent power to reconsider final orders which are still under their control. However, the decisions of this court clearly say that this inherent authority to modify is a limited one.” Id. at 338 (citation omitted). The Peoples Gas court noted that a modification attempted four years after entry of a final order was inappropriate. Id. at 339. The court suggested further that the PSC’s inherent authority to modify a final order should be exercised only upon a change of circumstances or upon a demonstrated public need or interest. Id. The principles announced in Peoples Gas were reaffirmed in Austin Tupler Trucking, Inc. v. Hawkins, 377 So.2d 679 (Fla.1979). See also Richter v. Florida Power Corp., 366 So.2d 798, 800 (Fla. 2d DCA 1979) (Florida case law recognizes the rule that an administrative agency may alter a final decision under “extraordinary circumstances”). Richter was recently cited with approval in Mann v. Department of Professional Regulation, Board of Dentistry, 585 So.2d 1059 (Fla. 1st DCA 1991).
Appellant has failed to demonstrate in his motion to set aside the “extraordinary circumstances” which are a prerequisite for revisiting a closed case. The motion to set aside final order was based upon alleged new evidence that the child’s death may have resulted from a manufacturing problem *120 which led to a recall of the anesthesia used during administration of the third nerve block only.[1] Yet the revocation of appellant’s license was not based exclusively on the facts surrounding the third treatment of B.M. Indeed, Russell’s alleged new evidence that the third and final batch of anesthetic was defective has no material bearing on any one of the findings of fact adopted by the Board. As found by the Board of Dentistry, this is not a persuasive argument for reopening this case. Appellant’s license was revoked because of a persistent pattern of negligence, including three separate instances in which appellant administered anesthetic to this child in excess of the manufacturer’s recommended dosage, resulting in adverse reactions each time; appellant’s failure to maintain appropriate records; failure to recognize and treat the patient’s respiratory distress after the third administration of anesthetic; and an unspecified recent “prior disciplinary action.” The hearing officer found, and the Board agreed, that all three treatments of B.M. fell below the established standard of care; the hearing officer found further, and the Board agreed, that appellant failed to recognize that special calculations are required when administering anesthesia to children. Most importantly, the case against appellant concerned the dosages administered to the child on all three occasions which were found to be not in keeping with the standard of care as established in community, and the case concerned appellant’s failure to recognize the special dosage requirements of children. Thus, while the subpotency of epinephrine in the third dosage of anesthesia may have actually contributed to the child’s death, this is not to say that appellant’s treatments did not nevertheless fall below the minimum standard of care given the dosages prescribed and administered by him. In other words, regardless of the child’s death, appellant’s dosages were found to be excessive on three occasions, his overall care was found to be below acceptable standards, and appellant failed to maintain adequate records. There is no record support for the conclusion of the dissent that the Board might choose to reduce the penalty imposed based upon evidence that Russell was not ultimately responsible for the death of his patient despite all of the reasons recounted above for the revocation of Russell’s license.
Accordingly, we affirm the Board’s final order denying appellant’s Motion to Set aside the Final Order.
ALLEN, J., concurs.
SMITH, Senior Judge, dissents with opinion.

. The invoice submitted by appellant shows the receipt of ASTRA Xylocaine on Aug. 8, 1990; obviously, this shipment of anesthesia could not have been used for the May 15 and July 11 treatments of B.M. There is no record indication that the anesthesia used in May and July, whether it was Xylocaine or Octocaine, was defective.