679 So.2d 1177 (1996)
McCAW COMMUNICATIONS OF FLORIDA, INC., Appellant,
v.
Susan F. CLARK, etc., et al., Appellees.
No. 86866.
Supreme Court of Florida.
September 26, 1996.
*1178 Floyd R. Self and Norman H. Horton, Jr. of Messer, Caparello, Madsen, Goldman & Metz, P.A., Tallahassee, for Appellant.
Robert D. Vandiver, General Counsel and David E. Smith, Director of Appeals, on behalf of Florida Public Service Commission, Tallahassee, and Marshall M. Criser and William W. Deem of Mahoney, Adams & Criser, P.A., Jacksonville, and R. Douglas Lackey and David M. Falgoust, Atlanta, Georgia, on behalf of an interested party, BellSouth Telecommunications, Inc., for Appellees.
SHAW, Justice.
We have on appeal an order[1] of the Public Service Commission (the Commission) relating to rates of telephone utilities. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. We affirm.
In the telecommunications business, local exchange companies (LECs), such as amicus BellSouth Telecommunications, Inc., provide local "landline" telephone service to consumers, while mobile service providers (MSPs), such as appellant McCaw Communications of Florida, Inc., provide "wireless" cellular telephone and paging services. In order for a cellular MSP customer to communicate with a landline LEC customer, the MSP must "interconnect" with the LEC using "switching" equipment owned by the LEC. At issue is the interconnection rate to be paid by MSPs to LECs for landline use.
The Commission made its first comprehensive attempt to regulate MSP interconnection rates in a 1988 order tying these rates to Commission-set "access charges," which are the fees paid to LECs by inter-exchange carriers (IXCs), such as Sprint and AT & T, for the use of local equipment in completing long distance calls. MSP interconnection rates would fluctuate with IXC access charges. Following 1988, access charges dropped significantly, resulting in a concomitant fall in MSP interconnection rates.
The Commission revisited the issue in 1995 and issued an order severing the link between MSP interconnection rates and IXC access charges. McCaw appeals this 1995 order, claiming that the order is unsupported by adequate evidence and violates the doctrine of administrative finality. We disagree.
This Court set out the applicable standard for reviewing a Commission order in Citizens v. Public Service Commission, 464 So.2d 1194 (Fla.1985):
As we have repeatedly stated, we will not reweigh or reevaluate the evidence presented to the commission, but will examine the record only to determine whether the order complained of meets the essential requirements of law and whether the agency had available to it competent substantial evidence to support its findings.
Id. at 1194.
In the present case, although the Commission had before it competing evidence on severing the link between MSP interconnection rates and IXC access charges, the record contains extensive evidence to support the Commission's decision. Witnesses Sims and Bailey testified at length concerning the advantages of severing the link. Further, evidence showed that the mobile communications industry is undergoing significant change and that IXC access charges are being influenced by factors unrelated to mobile interconnection. The Commission's order is supported by competent substantial evidence and meets the essential requirements of law.
This Court explained the doctrine of administrative finality in Peoples Gas System, Inc. v. Mason, 187 So.2d 335 (Fla.1966):
[O]rders of administrative agencies must eventually pass out of the agency's control and become final and no longer subject to *1179 modification. This rule assures that there will be a terminal point in every proceeding at which the parties and the public may rely on a decision of such an agency as being final and dispositive of the rights and issues involved therein. This is, of course, the same rule that governs the finality of decisions of courts. It is as essential with respect to orders of administrative bodies as with those of courts.
Id. at 339.
This Court cautioned against "too doctrinaire" an application of this rule:
We understand well the differences between the functions and orders of courts and those of administrative agencies, particularly those regulatory agencies which exercise a continuing supervisory jurisdiction over the persons and activities regulated. For one thing, although courts seldom, if ever, initiate proceedings on their own motion, regulatory agencies such as the commission often do so. Further, whereas courts usually decide cases on relatively fixed principles of law for the principal purpose of settling the rights of the parties litigant, the actions of administrative agencies are usually concerned with deciding issues according to a public interest that often changes with shifting circumstances and passage of time. Such considerations should warn us against a too doctrinaire analogy between courts and administrative agencies and also against inadvertently precluding agency-initiated action concerning the subject matter dealt with in an earlier order.
Id.
The setting of MSP interconnection rates is not a one-time adjudication of rights but rather a process that must take into account a multiplicity of factors affecting the telecommunications industry and its customers. Administrative finality was not meant to preclude the Commission from revisiting its 1988 order. The record reflects a plethora of changed circumstances that justify the Commission's decision.
We affirm the Commission's order.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Order number PSC-95-1247-FOF-TL.