# Supreme Court of Florida

_____

No. SC18-226
_____

**FLORIDA INDUSTRIAL POWER USERS GROUP,**
Appellant,

vs.

**JULIE IMANUEL BROWN, etc., et al.,**
Appellees.

June 13, 2019

CANADY, C.J.

This case is before the Court on appeal from a decision of the Florida Public Service Commission relating to the rates or service of a public utility providing electric service. We have jurisdiction. *See* art. V, § 3(b)(2), Fla. Const. The Commission approved a request made by Florida Power and Light (FPL) for the recovery of costs through base rates for four solar energy centers expected to be in service by December 31, 2017, and for four solar energy centers expected to be in service by March 1, 2018. These solar energy projects (So) for which a base rate adjustment (BRA) was approved are collectively referred to as the SoBRA projects. In granting FPL's request, the Commission concluded that the SoBRA

projects comported with the terms of a 2016 settlement agreement providing for recovery of these costs and that the projects were cost effective. Because we agree that the SoBRA projects met the terms set forth in the settlement agreement for cost recovery, we affirm the Commission's order.

## I. BACKGROUND

The starting point of this case is in 2016, when FPL filed a petition with the Commission for an increase in base rates. Florida Industrial Power Users Group (FIPUG) and eight other parties intervened in the rate case. Prior to the Commission rendering its decision on FPL's petition, a settlement was reached between FPL and three of the nine intervening parties—not including FIPUG. The settling parties then filed a motion for approval of the settlement agreement, which they asserted resolved all of the issues in the rate case. In addition to resolving all of the underlying issues in the pending rate case, section 10 of the settlement agreement included provisions allowing FPL to recover costs for certain solar projects if the projects met certain capacity requirements and in-service dates and were demonstrated to the Commission to be cost effective. The Commission summarized the requirements provided in the settlement agreement for recovery of the costs of the SoBRA projects as follows:

> There are several conditions that must be met for recovery in this case. First, FPL must request recovery for these projects during the term of the 2016 Agreement, or prior to December 31, 2020. Second, the cost of the components, engineering, and construction for any

solar project is capped at $1,750 per kilowatt alternating current (kWac). Third, for projects less than 75 MW (as are all of the projects proposed in this case): 1) the request for base rate recovery must be filed in the Fuel Clause docket as part of its final true-up filing; and 2) the issues are "limited to the cost effectiveness of each such project (i.e., will the project lower the projected system CPVRR [(cumulative present value revenue requirement)] as compared to each CPVRR without the solar project) and the amount of revenue requirements and appropriate percentage in base rates needed to collect the estimated revenue requirements." If the project meets these requirements, the terms of the 2016 Agreement have been met.

*In re Fuel & Purchased Power Cost Recovery Clause with Generating Performance Incentive Factor*, Order No. PSC-2018-0028-FOF-EI at 8, 2018 WL 367863 (Fla. Pub. Serv. Comm'n Jan. 8, 2018) (footnote omitted) ("final order"); *see also In re Petition for Rate Increase by Florida Power & Light Co.*, Order No. PSC-16-0560-AS-EI at 2-3, 2016 WL 7335779, at *2 (Fla. Pub. Serv. Comm'n Dec. 15, 2016) ("settlement order").

Although FIPUG was not a signatory to the settlement agreement, it was given the opportunity to participate in the evidentiary hearing on the settlement agreement but chose to take no position on it and did not present any testimony or other evidence opposing it. The Commission ultimately approved the settlement agreement on December 15, 2016, concluding "that the Settlement Agreement establishes rates that are fair, just, and reasonable and is in the public interest." *In re Petition for Rate Increase by Florida Power & Light Co.*, Order No. PSC-16-0560-AS-EI at 5, 2016 WL 7335779, at *3.

FIPUG did not appeal the settlement order, but Sierra Club, another party to the rate case who was also not a signatory to the settlement agreement, did oppose certain provisions of the agreement and appealed the settlement order. *See Sierra Club v. Brown*, 243 So. 3d 903 (Fla. 2018). We affirmed the settlement order in *Sierra Club*, concluding that the Commission applied the appropriate public interest standard in its consideration of the settlement agreement and that the Commission's decision to approve the settlement agreement was supported by competent, substantial evidence. *Id*. at 913, 916. We also noted in *Sierra Club* that "an independent express prudence finding was not a prerequisite to a public interest finding . . . and there was no need for the Commission to make an express individual prudence determination." *Id.* at 913.

In March 2017, in accordance with the settlement order, FPL filed its Petition for Approval of Solar Base Rate Adjustments (solar petition) in the Fuel and Purchased Power Cost Recovery Clause docket (fuel docket), in which it requested an increase in base rates to recover costs for the SoBRA projects. FPL asserted that the 2017 and 2018 SoBRA projects were cost effective under the settlement agreement because they lowered the system CPVRR in 2017 and 2018 and the cost for each center fell below the $1,750 per kWac cap. FPL asked the Commission to find that the SoBRA projects satisfied the cost requirements established by the settlement agreement and that the projects were cost effective.

- 4 -

After holding an evidentiary hearing on the solar petition, the Commission issued its final order, concluding that the SoBRA projects complied with the settlement order and were cost effective and therefore eligible for cost recovery. FIPUG now appeals that order, raising three issues that will be addressed in turn.

## II. ANALYSIS

First, FIPUG argues that the Commission erred by failing to conduct a prudence review[1] prior to approving FPL's solar petition. But this argument is foreclosed by the settlement order.

The details of the SoBRA mechanism were set forth in the settlement agreement. FIPUG was given an opportunity to review and challenge the provisions of the settlement agreement yet chose to take no position on the settlement agreement. By failing to object to the settlement agreement's

---

1. Section 366.06(1), Florida Statutes (2017), provides that

> [t]he commission shall investigate and determine the actual legitimate costs of the property of each utility company, actually used and useful in the public service, and shall keep a current record of the net investment of each public utility company in such property which value, as determined by the commission, shall be used for ratemaking purposes and shall be the money honestly and prudently invested by the public utility company in such property used and useful in serving the public, less accrued depreciation.

"It is from this statute that the Commission derives its prudence standard, which it applies to ensure that the recovered costs result from prudent investments." *Sierra Club*, 243 So. 3d at 908.

provisions on the cost-effectiveness criteria and the base rate recovery mechanism for the SoBRA projects at the time the settlement agreement was before the Commission and by failing to appeal the Commission's final order approving the settlement agreement, FIPUG has waived its right to challenge these provisions.

Further, even if FIPUG had not waived its right to challenge these provisions, there is no merit to its argument that the Commission was required to independently apply the prudence standard to projects contained within the settlement agreement. While it would have been proper for the Commission to apply the prudence standard to the SoBRA projects in absence of the settlement agreement, we held in *Sierra Club* that "[w]hen presented with a settlement agreement, . . . the Commission's review shifts to the public interest standard." 243 So. 3d at 909. The public interest standard considers "whether the agreement—as a whole—resolved all the issues, 'established rates that were just, reasonable, and fair, and . . . is in the public interest.' " *Id.* (quoting *Citizens v. Fla. Pub. Serv. Comm'n*, 146 So. 3d 1143, 1164 (Fla. 2014)).

The 2016 settlement agreement, which contained the terms applicable to the solar projects and SoBRA mechanism, is the same agreement that came before this Court and was affirmed in *Sierra Club*. *See id.* at 914. In *Sierra Club*, we stated that "it is neither a departure from the essential requirements of law nor a usurpation of legislative authority for the Commission to invoke [the public

interest standard] when no law precludes settlement." *Id.* at 910. We also noted that "[n]aturally, the prudence of large capital investments is a relevant consideration in the Commission's review of a settlement under its public interest standard because imprudent investments of millions of dollars would likely clash with a public interest finding." *Id*. at 912. Because the public interest standard itself incorporates prudence considerations, we by no means suggested that parties can use a settlement agreement to override statutory requirements. We rejected Sierra Club's argument that it was necessary for the Commission to independently apply a prudence standard to one of the other projects contained within the settlement agreement and held that the Commission was only required to apply its public interest standard to the settlement agreement as a whole.

If, as FIPUG suggests here, the Commission were later required to conduct a prudence or need determination for the SoBRA projects, it would have had to vacate the settlement order, which is contrary to the doctrine of administrative finality. We explained the doctrine of administrative finality in *Peoples Gas System, Inc. v. Mason*, 187 So. 2d 335, 339 (Fla. 1966):

> [O]rders of administrative agencies must eventually pass out of the agency's control and become final and no longer subject to modification. This rule assures that there will be a terminal point in every proceeding at which the parties and the public may rely on a decision of such an agency as being final and dispositive of the rights and issues involved therein. This is, of course, the same rule that governs the finality of decisions of courts. It is as essential with respect to orders of administrative bodies as with those of courts.

Once the Commission entered the settlement order and that order was affirmed by this Court on appeal, the parties and the public were entitled to rely on that order and the settlement agreement as being final and dispositive of the rights and issues involved therein. FPL relied on that order by investing in and constructing eight solar energy centers. FIPUG does not attempt to argue that there has been any significant change in circumstances or demonstrated public interest that might provide an exception to the doctrine of administrative finality.

In its second issue on appeal, FIPUG asserts that the Commission improperly based its finding of the cost-effectiveness of the SoBRA projects on uncorroborated hearsay. The record and the applicable law do not support this contention.

Prior to holding a hearing on the solar petition, the Commission issued an order establishing procedure, which set forth the order of witnesses and other procedures for the hearing. The order establishing procedure required that a party "shall identify each witness the party wishes to voir dire as well as state with specificity the portions of that witness' pre-filed testimony, by page and line number, and/or exhibits, by page and line number, to which the party objects." It further provided that if a party failed to object to the specific portions of a witness's testimony or exhibits in the party's prehearing statement, the party was

prohibited from conducting voir dire at the hearing absent a showing of good cause.

The Commission held a prehearing conference on the solar petition in accordance with the procedures set forth in the order establishing procedure. FIPUG lodged a general objection to all FPL witnesses being considered experts. The prehearing officer ruled that because FIPUG did not identify the witnesses that it wished to voir dire or the portions of witnesses' testimony that were objectionable in its prehearing statement as required by the order establishing procedure, FIPUG waived its right to voir dire the witnesses and challenge the expertise of FPL's witnesses at the hearing.

The evidentiary hearing on the solar petition was held on October 25, 2017. In accordance with the settlement agreement, the SoBRA projects were taken up as a separate issue in the fuel docket, and the Commission considered evidence regarding the cost effectiveness of the SoBRA projects and whether the SoBRA projects complied with the cost requirements and cost recovery mechanism that were set forth in the settlement agreement. FPL presented testimony from several witnesses in support of cost recovery for the SoBRA projects, including Juan Enjamio, a long-time FPL employee and expert in resource planning, reliability analysis, and economic analysis.

Enjamio testified that the costs of the proposed SoBRA projects would fall below the $1,750 per kWac cap allowed by the settlement agreement and he provided an economic analysis demonstrating that the SoBRA projects were cost effective. In completing this analysis, FPL considered multiple components to determine cost-effectiveness, including: solar revenue requirements, avoided generation costs, and avoided system costs. For the SoBRA projects, the revenue requirements included fixed operation and maintenance, equipment, installation, land cost, and transmission interconnection cost. The avoided generation cost component considered avoided generation capital, avoided fixed operation and maintenance, avoided transmission interconnection, avoided capital replacement, avoided incremental gas transport, and avoided short-term purchases. The avoided system cost component considered the factors of fuel savings, avoided variable operation and maintenance, and emission costs savings. FPL's CPVRR analysis assumed that each project had an actual life of thirty-three years, with the analysis ending in 2050.

Enjamio testified that his initial economic analysis concluded that the SoBRA projects would result in savings to FPL customers in six of nine scenarios, with a total benefit up to $39 million in CPVRR savings. Enjamio later filed revised testimony to provide an updated economic analysis showing that the SoBRA projects would result in savings to FPL customers in seven of nine

scenarios, with a total benefit of up to $106 million in CPVRR savings. The emission cost savings consideration did not incorporate $CO_2$ pricing until 2028. Enjamio identified ICF's[2] $CO_2$ emissions cost forecast as a major assumption in FPL's economic analyses. The $CO_2$ cost projections used in FPL's analysis were based on ICF's $CO_2$ emission cost forecast, dated December 2016. Neither FIPUG nor any other intervenor offered testimony rebutting the $CO_2$ emission cost forecast or provided any alternative emission cost forecast. Enjamio also testified that the SoBRA projects met the capacity requirements set forth in the settlement agreement and that they met a reliability need. FIPUG cross-examined Enjamio but did not present any witnesses to rebut his testimony.

FIPUG now argues that the Commission's finding that the SoBRA projects are cost effective is not supported by competent, substantial evidence because there was no expert witness to support the carbon cost assumption in the ICF report and the ICF report was hearsay that was uncorroborated and unsworn. FIPUG also challenges Enjamio's expertise.

We first address FIPUG's challenge to Enjamio's expertise, which fails because FIPUG failed to identify Enjamio in its prehearing statement as a witness that it sought to voir dire, as required by the order establishing procedure. Because

_____

2. ICF is a consulting firm with extensive experience in forecasting the cost of air emissions and is recognized as one of the industry leaders in the field.

FIPUG failed to comply with the order establishing procedure, it waived its right to voir dire Enjamio regarding his expertise and challenge that expertise on appeal.

FIPUG claims that the Commission's finding of cost-effectiveness is not supported by competent, substantial evidence because there was no expert witness to support the carbon cost assumption in the ICF report and the ICF report was hearsay that was uncorroborated and unsworn. This claim fails under the relaxed hearsay rule applicable under the Administrative Procedure Act. Section 120.57(1)(c), Florida Statutes (2017), which is a provision of the Administrative Procedure Act, provides that "[h]earsay evidence may be used for the purpose of supplementing or explaining other evidence, but it shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." The ICF report was not the sole basis for the Commission's finding on the cost-effectiveness of the SoBRA projects; rather, it was just one piece of Enjamio's economic analysis, which supplemented and explained his overall testimony about the projects' cost-effectiveness, customer savings, and noneconomic benefits. We therefore conclude that the Commission's cost-effectiveness findings were based on competent, substantial evidence.

In its final issue on appeal, FIPUG claims that the Commission improperly used the fuel clause to consider cost recovery for the SoBRA projects. Once again, this argument is precluded by the settlement order.

The settlement order expressly provided that "FPL will file a request for approval of the solar project in the Fuel Cost Recovery Clause docket." *In re Petition for Rate Increase by Florida Power & Light Co.*, Order No. PSC-16-0560-AS-EI at 3, 2016 WL 7335779, at*2. The settlement agreement stated that the Commission, on its own initiative or upon good cause shown, may set FPL's request for approval of the SoBRA projects for a separate hearing to be held in the fuel docket. In accordance with this procedure, the Commission considered FIPUG's arguments concerning why it believed that the SoBRA projects should be considered in a separate hearing.

FIPUG alleged that the recovery of the costs of the SoBRA projects through the fuel docket was an attempt by FPL to use the fuel clause to recover predictable capital costs, which is contrary to the purpose of the fuel clause. FPL countered that FIPUG's capital and return on investment costs for the SoBRA projects are to be recovered through base rates beginning on the commercial operation date of each SoBRA project, not in the 2017 and 2018 fuel cost recovery factors. FPL pointed out that the fuel factors to be implemented from January 1 to March 1, 2018, had already been stipulated to by the parties and previously approved by the Commission and therefore could not change regardless of the Commission's final decision on the SoBRA recovery. The Commission concluded that because FPL was not requesting recovery through the fuel adjustment clause factor but through

increases in base rates, consideration of the SoBRA projects during the fuel clause hearings was purely administrative. And because FIPUG did not allege that it did not have adequate notice of the issues relating to the SoBRA projects or that it had been harmed in any way by the inclusion of those issues in the fuel docket, the Commission concluded that FIPUG had not shown good cause to set a separate hearing for the SoBRA projects.

At its core, FIPUG's argument here is that the Commission should not have previously approved the provisions in the settlement agreement that set forth the procedure for the Commission's consideration of the SoBRA projects at the time of the fuel clause hearing. We conclude that FIPUG is procedurally barred from challenging this procedure, because FIPUG took no position on the settlement agreement and did not challenge this provision of the settlement agreement at the time the settlement agreement was before the Commission or in an appeal of the settlement order.

Even if FIPUG were not procedurally barred from now making this argument, we would conclude that it is without merit. The settlement agreement and the final order dictate that cost recovery of the SoBRA projects is to be through base rates, not through the fuel clause, and that recovery is only considered at the time of the fuel clause hearing for administrative purposes. Nothing about

the SoBRA mechanism changes the nature of what is recovered through the fuel clause.

### III. CONCLUSION

As explained above, we conclude that by failing to object at the time that the settlement agreement was before the Commission and by failing to appeal the settlement order, FIPUG waived its right to challenge the provisions in the settlement agreement related to the requirements and procedures for cost recovery of the SoBRA projects. We also conclude that the Commission's findings regarding the cost-effectiveness of the SoBRA projects were based on competent, substantial evidence. Accordingly, we affirm the Commission's final order on appeal.

It is so ordered.

POLSTON, LABARGA, LAWSON, LAGOA, LUCK, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Florida Public Service Commission

Jon C. Moyle, Jr. and Karen Putnal of Moyle Law Firm, P.A., Tallahassee, Florida,

for Appellant

Keith C. Hetrick, General Counsel, Samantha M. Cibula, Attorney Supervisor, and Adria E. Harper, Senior Attorney, Florida Public Service Commission, Tallahassee, Florida,

for Appellee Florida Public Service Commission

María José Moncada and William P. Cox, Florida Power & Light Company, Juno Beach, Florida; and Alvin B. Davis of Squire Patton Boggs (US) LLP, Miami, Florida,

for Appellee Florida Power & Light Company