366 So.2d 798 (1979)
Ronald RICHTER, Individually, Richter Corporation, a Florida Corporation, and All Others Similarly Situated, Appellants,
v.
FLORIDA POWER CORPORATION, Appellee.
No. 78-488.
District Court of Appeal of Florida, Second District.
January 8, 1979.
As Amended January 23, 1979.
L.C. Schowe, St. Petersburg, for appellants.
Sylvia H. Walbolt and J. Brent Walker, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellee.
Prentice P. Pruitt, Donald R. Alexander and Joseph A. McGlothlin, Tallahassee, for amicus curiae Florida Public Service Commission.
SCHEB, Judge.
Appellants' sole point on appeal succinctly posits the issue for our determination: "Does the Public Service Commission or circuit court have jurisdiction in a claim brought by the consumers [appellants] in the nature of money damages against a utility [appellee] for alleged illegal rates?"
In October 1977 Ronald Richter filed a class action in circuit court on behalf of himself and other similarly situated electricity users against Florida Power Corporation (FPC). The complaint alleged that the consumers had been forced to pay unreasonably high electrical rates because of excessive fuel adjustment charges[1] in violation of § 366.03, Fla. Stat. (1977). The complaint sought refunds of $3.5 million to the consumers.
FPC moved to dismiss the complaint, arguing that the Public Service Commission (PSC) has exclusive jurisdiction to determine the reasonableness of rates charged by a public utility. The trial court found FPC's point well taken and entered an order dismissing the complaint with prejudice. This appeal by the consumers ensued.
We think the trial court correctly found that under the statutory and decisional law *799 of this state the PSC has exclusive jurisdiction to determine the matters alleged in the consumers' complaint.[2] Therefore, we affirm.
Chapter 366, Fla. Stat. (1977) embraces the statutory regulation of public utilities. In § 366.01 the legislature has mandated that the regulation of public utilities "is declared to be in the public interest and this chapter ... shall be liberally construed for the accomplishment of that purpose." Section 366.03 requires that all rates charged by regulated utilities be "fair and reasonable," while § 366.04 gives the PSC exclusive jurisdiction "to regulate and supervise each public utility with respect to its rates... ." The decisional law of Florida attests to the comprehensive character of the PSC's authority in the field of utility regulation.[3]See, e.g., Storey v. Mayo, 217 So.2d 304 (Fla. 1968).
The consumers recognize that the PSC has broad powers to set rates for regulated utilities, but contend that this power extends only to prospective rate determinations. Thus the consumers argue that PSC is not authorized by Ch. 366 to retroactively modify its final rate orders to require refunds; therefore, they contend, the PSC does not have exclusive jurisdiction to adjudicate the matters alleged in their complaint. The consumers rely upon several cases, the most compelling of which is City of Miami v. Public Service Commission, 208 So.2d 249 (Fla. 1968). There the City of Miami petitioned the supreme court for certiorari to review two PSC orders setting telephone rates for Southern Bell and electrical rates for Florida Power & Light. These rate orders, which had been entered at the conclusion of a one-year test period, reduced the rates that the two utilities could thereafter charge. The reason for the ordered reduction was that the companies had realized excessive profits during the test period. The City of Miami argued, inter alia, that the PSC had erred in not ordering the two utilities to refund the excessive profits they had collected during the test period. In rejecting this argument the supreme court said: "An examination of pertinent statutes [Chapter 366] leads us to conclude that the Commission would have no authority to make retroactive ratemaking orders." 208 So.2d at 259. We recognize this principle but do not believe it governs this case.
It is, of course, vital to both the regulated utility and the consumers that the PSC's *800 rate orders be final. Chapter 366, though it has changed to some degree since the City of Miami decision, still indicates that the PSC cannot retroactively alter previously entered final rate orders just because hindsight makes a different course of action look preferable. See, e.g., §§ 366.06(3) and 366.07. However, here the allegations of the consumers' complaint do not fall within the normal instance of hindsight as mentioned above. The complaint alleges that the consumers were forced to pay unreasonably high fuel adjustment charges because of an illegal scheme (known as "daisy-chaining") conducted by a fuel consultant employed by FPC; that through this daisy-chaining scheme FPC paid 54 cents per gallon for oil that had an actual value of only 21 cents per gallon; that FPC knew of this scheme, or should have known of it, yet allowed the excessive fuel costs to be passed on to the consumers through the fuel adjustment charges.[4] So the complaint alleges actions on the part of FPC which prevented the PSC from having the true facts before it when it sanctioned the fuel adjustment charges here in question.
In Annot., 73 A.L.R.2d 939, 951-52 (1960), dealing with the power of administrative agencies to alter final orders, the author states:
Although denying, in the absence of statutory authority, the power of an administrative agency to reopen and reconsider a final decision, some courts have recognized exceptions to the rule under extraordinary circumstances, as where a substantial change in circumstances, or fraud, surprise, mistake, or inadvertence is shown. (Footnotes omitted.)
Likewise, Florida decisions recognize that an administrative agency may alter a final decision under extraordinary circumstances. Davis v. Combination Awning & Shutter Co., 62 So.2d 742, 745 (Fla. 1953); 1 Fla. Jur.2d Administrative Law § 89 (1977); see generally Keating v. State ex rel. Ausebel, 173 So.2d 673, 679 (Fla. 1965). This rule of law seems especially appropriate in light of the purposes of Chapter 366, and the broad power granted to the PSC under § 366.05(1) "to exercise all judicial powers, issue all writs and do all things, necessary or convenient to the full and complete exercise of its jurisdiction and the enforcement of its orders and requirements." We think that to effectively and completely exercise its jurisdiction the PSC must have the power to alter previously entered final rate orders under extraordinary circumstances, and clearly the circumstances alleged here are extraordinary.
We find support for this view from a recent opinion from the Supreme Court of Ohio.[5] In Ohio Power Co. v. Public Utilities Commission, 54 Ohio St.2d 342, 376 N.E.2d 1337 (1978), the Public Utilities Commission ordered the refund of unreasonable fuel adjustment charges collected by Ohio Power Company. Ohio, like Florida, has statutes giving the Public Utilities Commission power to set reasonable rates for regulated utilities. The power company appealed to the supreme court arguing (as the consumers do here) that the Commission did not have the power to retroactively change its rates and grant refunds. The supreme court rejected this argument, saying:

*801 We perceive that the requirement of fairness which compels adjustment in rates to compensate utilities for escalating fuel costs also compels retrospective reconciliation to exclude charges identifiably resulting from unreasonable computations or inclusions.
376 N.E.2d at 1338-39. We think the rationale of this Ohio decision represents a pragmatic approach to the problem before us.
We hold that the PSC does have exclusive jurisdiction to decide the issue raised by the consumer's complaint. The PSC is best equipped to investigate the consumers' allegations, and, if necessary, to establish the mechanism whereby refunds could be made to the thousands of consumers affected.
Accordingly, we affirm the trial court's order dismissing the complaint with prejudice.
GRIMES, C.J., and RYDER, J., concur.
NOTES
[1] As all electricity users know, electricity bills presently consist of two elements: the base rate, which covers the legitimate costs of operating the utility company; and, the fuel adjustment charge, intended to compensate the utility company for fluctuations in the price of fuel. Here the consumers' allegations go only to the reasonableness of the fuel adjustment charges, and do not involve the base rate.
[2] We point out that the consumers sought only to be reimbursed for the allegedly unreasonable fuel adjustment charges they have paid. We do not pass upon the circuit court's jurisdiction where a plaintiff seeks consequential damages as a result of a utility's violation of Ch. 366. See State ex rel. McKenzie v. Willis, 310 So.2d 1 (Fla. 1975); Southern Bell Telephone & Telegraph Co. v. Mobile America Corp., 291 So.2d 199 (Fla. 1974).
[3] We pause to express our appreciation to the Public Service Commission for accepting our invitation to file an amicus curiae brief in this cause. In its brief the PSC maintains that it does have the power to grant refunds of the previously collected fuel adjustment charges. The PSC informs us that in May 1978 it engaged special counsel to investigate the matters alleged in the consumers' complaint in connection with similar litigation pending in United States District Court, Middle District of Florida. In October 1978 special counsel made his report to the PSC recommending that FPC be required to show cause why $8.5 million in fuel adjustment charges should not be refunded to FPC customers. FPC denied any wrongdoing, but expressed a willingness to enter into settlement negotiations. By motion FPC asked that the proceedings be held in abeyance and special counsel be ordered to confer with FPC to discuss a settlement. The motion was granted, and during the pendency of this appeal these negotiations have been in progress. Pursuant to an order from this court to apprise us of the status of these negotiations, FPC has informed us that on December 15 special counsel reported to the PSC that a settlement proposal had been agreed to "in principle." On December 29 a public hearing was held on the matter, and a written settlement agreement calling for a refund to the consumers of $6.5 million was executed on January 4, 1979. The PSC has approved this agreement, and a motion has been filed in the federal district court to obtain that court's approval. Assuming the district court approves the agreement, notice to the class of persons who were FPC customers between June 1, 1973, and December 31, 1975, will be given, and they will have an opportunity to obtain refunds in accordance with the settlement agreement. FPC estimates that the refunds cannot be expected for at least six months.
[4] The consumers allege in their complaint that the fuel adjustment charges were excessive from 1973 until present. The PSC points out in its amicus curiae brief that prior to December 1974 fuel adjustment charges were not subjected to a formal hearing with a concomitant final rate order; rather, the utility itself calculated the fuel adjustment charges through the use of a formula prescribed by the PSC. Since December 1974 fuel adjustment charges have been subjected to a formal hearing by the PSC. See PSC Order 6332 (October 29, 1974); 1974 Op.Att'y.Gen.Fla. 074-309 (October 9, 1974).
[5] Two unpublished writs of prohibition from the supreme court also lend support to our view. In State ex rel. Florida Power Corp. v. Pfieffer, No. 46,384 (Fla. April 28, 1975) and State ex rel. Florida Power & Light Co. v. Satin, No. 47,949 (Fla. November 25, 1975) circuit judges were enjoined from hearing class-action suits filed by consumers seeking rebates of fuel adjustment charges. Though not stated on the face of the writs themselves, it is evident that the supreme court issued them on the basis of its belief that the PSC had exclusive jurisdiction to decide the rebate issue.