534 So.2d 695 (1988)
SOUTH FLORIDA NATURAL GAS COMPANY, Appellant,
v.
PUBLIC SERVICE COMMISSION, Appellee.
No. 71035.
Supreme Court of Florida.
December 8, 1988.
*696 Arthur J. England, Jr. of Fine, Jacobson, Schwartz, Nash, Block and England, Miami, and Rose, Sundstrom and Bentley, Tallahassee, for appellant.
William S. Bilenky, General Counsel, Florida Public Service, Com'n, Tallahassee, for appellee.
PER CURIAM.
South Florida Natural Gas Company appeals an order of the Florida Public Service Commission and argues that the commission's actions concerning a proposed rate increase were arbitrary and violated the company's due process rights. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. We affirm the commission's order.
The relevant facts reflect that the company, a small natural gas utility with 3200 customers, filed a request with the commission for a permanent rate increase of $343,414 and an interim rate increase of $120,213 per year. In accordance with its rules, the commission suspended the company's proposed permanent rates pending a hearing and a final decision but later approved a revised interim rate request of $88,392. In its final order, the commission approved a $49,542 permanent rate increase and ordered a $38,850 refund to the company's customers on an annual basis for interim rates previously collected.
The company supplied the commission with detailed financial information and prefiled testimony from a corporate official and an outside expert consultant. These individuals testified before the commission and were cross-examined by the commission's staff. The commission rejected the proposed increase primarily because of the company's attrition calculation.[1] The commission summarized its reasoning as follows:
Three types of attrition are generally recognized: net operating income (NOI) attrition, rate base attrition and capital attrition. NOI attrition occurs when operating expenses increase at a faster rate than operating revenues. Rate base attrition, sometimes called investment attrition, occurs when additional financing costs must be incurred to support the increase in cost of rate base. Capital attrition is caused by increasing financial cost due to higher capital cost rates, such as occur with rising interest rates.
Upon review of South Florida's attrition calculations, and in consideration of the Staff's recommendations deriving from these calculations, we conclude that there is nothing in the record of this case which supports the application of the attrition concept. In reaching this conclusion, we are aware that the Utility filed an attrition calculation as part of its MFRs. However, supplying the calculation required by the MFRs, Schedule C-37, does not create a presumption that attrition has existed in the past or will exist in the future. It simply provides a way to measure attrition once it has been established. The Utility has the burden to establish attrition as a relevant factor to be considered in setting rates. In this case, we find that South Florida has failed to meet that burden. We find no evidence, or even an allegation, that attrition has historically affected the Utility's earnings or that it will affect them in the future. We conclude that the application of the attrition concept in this case is inappropriate.
Our conclusion that the application of an attrition methodology in this case is inappropriate has necessitated the use of *697 other regulatory concepts in evaluating the Utility's case. While we reject the concept of an attrition calculation as unsupported by the record, the Utility has presented evidence on some known changes in expenses which our regulatory responsibility demands we consider, notwithstanding the manner in which they were presented. To accomplish this, we have applied a more [traditional] regulatory methodology to the case. This methodology is based on analysis of the historical test year with accounting adjustments to give effect to factors which will have an impact [on] the Utility's earnings during the period the new rates will be in effect.
Applying the adjusted test-year methodology in this case, we find that South Florida has justified a revenue increase of $49,542. This amount reflects an overall cost of capital with a midpoint of 11.06 percent. Inasmuch as this revenue increase is less than the $88,392 interim revenue increase granted by Order No. 16861, a refund of interim rates totalling $38,850 on an annual basis is required.
In re: Petition of South Florida Natural Gas Company for a Rate Increase 2-3 (Docket No. 860341-GU; Order No. 17933, Aug. 4, 1987).
The company argues that its due process rights were violated because the commission: (1) placed an improper burden of proof on the company; (2) created disputed issues of fact although no party apparently challenged the company's evidence; (3) treated staff questions as substantive evidence; and (4) disregarded a great deal of the company's unchallenged evidence concerning numerous issues of fact. The company asserts that the commission must accept its fiscal evidence as submitted and cannot utilize the commission staff's fiscal information obtained during cross-examination. Further, the company argues that the commission acted arbitrarily and unreasonably by neither allowing rate case expenses incurred as a result of the staff's discovery activities nor allegedly nonrecurring salary expenses and in adjusting the operating and maintenance expense benchmark variances and the billing determinants. In conclusion, the company asks that we award it those amounts already proven in what it claims was a nonadversarial proceeding.
More specifically, the company argues that the commission failed to take a position on all of the issues and, because the commission failed to present testimony or tangible evidence, it cannot reevaluate the fiscal evidence presented. Further, because no evidence was presented by the commission, no material issues exist, thus precluding the commission from a formal proceeding under section 120.57(1), Florida Statutes (1985). We reject this contention. The act of filing[2] creates issues of material fact for all factors comprising the justification for the increase. We find that, under the commission's rate-setting authority, a utility seeking a change must demonstrate that the present rates are unreasonable, see section 366.06(1), Florida Statutes (1985), and show by a preponderance of the evidence that the rates fail to compensate the utility for its prudently incurred expenses and fail to produce a reasonable return on its investment. See Gulf Power Co. v. Public Serv. Comm'n, 453 So.2d 799 (Fla. 1984). Here, we find that the record justifies the commission's conclusion that the company failed to satisfy its burden.
We reject the utility's contention that it was deprived of due process of law because the commission allowed its staff to make inquiry of utility witnesses and assist in evaluating the evidence. Section 366.06(1), Florida Statutes (1985), sets forth the standard by which the commission is to act during a rate adjustment request. It provides, in part:
The commission shall investigate and determine the actual legitimate costs of the property of each utility company, actually used and useful in the public service, and shall keep a current record of the net investment of each public utility company in such property which value, as determined *698 by the commission, shall be used for ratemaking purposes and shall be the money honestly and prudently invested by the public utility company in such property used and useful in serving the public....
We find that the commission is clearly authorized to utilize its staff to test the validity, credibility, and competence of the evidence presented in support of an increase. Without its staff, it would be impossible for the commission to "investigate and determine the actual legitimate costs of the property of each utility company, actually used and useful in the public service." Id.
We find that none of the other arguments presented by the company merit discussion. Accordingly, we affirm the commission's order.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., did not particpate in this case.
NOTES
[1] Attrition is a means to adjust future rates, keeping them in balance with future costs thus assuring the utilities of a proper rate of return.
[2] A company in this type of proceeding must meet the minimum filing requirements for gas utilities set forth in Rule 25-7.039, Florida Administrative Code.