WENTWORTH, Senior Judge.
This is an appeal of a final order entered by the Florida Public Service Commission denying appellant Sunshine Utilities’ Motion for Reconsideration of a Final Order correcting prospectively a rate base computation effected by a 1984 order, and requiring Sunshine to refund overearnings after August 30, 1988, when the inquiry was noticed. We affirm, finding no error with respect to the three issues argued here, as follows: (1) whether the Public Service Commission (PSC or Commission) properly placed the burden upon the company to prove that the sum of $280,753 should be allocated to its investment and not to Contributions-in-Aid-of-Construction (CIAC);[1] (2) whether there was a basis for the PSC to determine that its initial order, No. 13014, was in error; (3) whether the PSC erred in rejecting Sunshine Utilities’ proposed findings of fact numbers 6 and 7.
Appellant, Sunshine Utilities, is a water utility which provides water service to approximately 2,000 customers in Marion County. Appellant seeks review of the PSC’s Order No. 23354, an order denying reconsideration of a final order requiring a refund to customers (Order No. 22969). The order requiring refund declared that a prior PSC order entered on February 20, 1984, Order No. 13014, which set the initial rate base, contained an incorrect assumption.[2] The order requiring refund further provided that CIAC be increased by $280,-753 on the ground that Sunshine Utilities failed to prove its investment in this amount.[3]
*665 Sunshine concedes the PSC has authority to correct errors in prior orders, but as- . serts that the PSC, as challenger of the correctness of the prior order’s factual premises, has the burden of presenting evidence on the critical facts. Sunshine further contends that it can rely on the terms of the prior order to establish its investment and does not have to submit eviden-tiary proof of its investment in order to retain its rate base. We disagree and affirm the PSC’s order.
The PSC, under the pertinent statutes as construed by earlier decisions, Reedy Creek Utilities v. Florida Public Service Commission, 418 So.2d 249 (Fla.1982), and Richter v. Florida Power Corp., 366 So.2d 798 (Fla. 3d DCA 1979), has the authority to determine whether there are mistakes of this character in its prior orders and has a duty to correct such errors. *666 Section 367.081, Florida Statutes, provides that the PSC has exclusive jurisdiction over the rates of each public utility and must:
either upon request or upon its own motion, fix rates which are just, reasonable, compensation.... In every such proceeding, the commission shall consider ... a fair return on the investment of the utility in property used and useful in the public service. However, the commission shall not allow the inclusion of contributions-in-aid-of-construction in the rate base of any utility during a rate proceeding, (e.s.)
In Reedy Creek, supra, the court recognized PSC’s inherent authority to modify its orders but noted that such authority is not without limitation. See also, Richter, supra {“where a substantial change in circumstances, or fraud, surprise, mistake, or inadvertence is shown ... the PSC must have the power to alter previously entered final rate orders”). Peoples Gas Systems, Inc. v. Mason, 187 So.2d 335, 339 (Fla.1966), and Austin Tupler Trucking, Inc. v. Hawkins, 377 So.2d 679 (Fla.1979), recognize an exception to the doctrine of administrative finality where there is a demonstrated public interest. Unlike the issues raised in those cases (authority to approve territorial agreements and the dormancy of transportation certificates), the issue of prospective rate-making is never truly capable of finality.
In the present case, the PSC determined that the factual premise for its prior Order No. 13014 was in error because:
The Commission, at that time, increased plant-in-service to reflect the original cost study, but made no adjustment to reconcile the difference as to whether it was Utility investment. Staff Witness Wood testified that an error was made by the Commission in that docket. In this hearing, Witness Wood testified that because the Utility failed in that docket, and in this case, to prove that it had any investment in the $280,753 difference, ... a corresponding adjustment to CIAC should have been made.
The order requiring refund is also supported by testimony that no evidence of investment was presented except Order No. 13014. Sunshine contends that the original cost study by the PSC engineer recognized an investment of $280,753. However, the original cost study was to determine the original cost of the total system and did not determine the source or time of investment. Here, Sunshine never attempted by any evidentiary means to establish its investment. It contended that the audits indicated the records were sufficient to establish CIAC, and therefore any difference between the record and audit would have to be attributable to investment. However, testimony also indicated that the records did not reflect the CIAC which may have existed prior to the purchase of the company, the CIAC that the former owners might have had.
Although Sunshine contended that it did not have the burden of establishing its investment, statutory and case law indicates to the contrary. See South Florida National Gas Co. v. Public Service Commission, 534 So.2d 695 (Fla.1988). Section 367.081, Florida Statutes, provides that the commission shall upon request or upon its own motion fix rates which are reasonable. The statute further provides that in determining whether a rate is reasonable, the commission must consider, among other things, a fair return on investment. To do so, the PSC must have authority to require proper evidence as to the utility’s investment.
The Commission properly rejected Sunshine’s proposed findings of fact numbers 6 and 7. The PSC did not abuse its discretion in concluding that without tax returns, the unconfirmed assertions of the utility’s witness could not compel finding No. 6 that “[njone of the water systems were written off or otherwise expensed on the owner’s tax returns.” An administrative tribunal is not required to accept such evidence without evaluation, particularly where, as here, the tax returns were withheld.
The PSC likewise did not err in rejecting Sunshine’s proposed finding No. 7 that all CIAC received by Sunshine has been recorded by the utility. Testimony *667 that the audit did not and could not reflect CIAC that may have existed when the systems were purchased constituted competent substantial evidence supporting the Commission’s rejection of the proposed finding.
Affirmed.
SMITH and WIGGINTON, JJ., concur.

. The amount of CIAC is at issue because the statute, § 367.081, Florida Statutes, does not allow the inclusion of CIAC in the rate base of any utility during a rate proceeding. Therefore the increase in the amount of CIAC would decrease the rate base.

. While acknowledging that its staff had made an incorrect assumption as to the origin of the |280,753 adjustment, the final order adopted the PSC staff position of imputing that sum as a statutory exclusion and required it to refund overearnings for the period of August 30, 1988 (when investigation commenced), through December 31, 1989. The PSC ordered the utility to refund 9.79% of its revenues for service rendered between September 19, 1989, through December 31, 1989, but the amount to be refunded between August 30, 1988 and September 19, 1989 was limited to 7.68% due to the insufficient amount of funds being held subject to refund.

.The order for refund states in material part:
The error in Order No. 13014 was discovered by Staff in its review of the Utility’s 1987 annual report for overearnings. In its annual report, the Utility had reflected the difference as a negative acquisition adjustment. The Utility reflected this in its calculation of rate base as a reduction. Utility Witness Nixon testified that the difference was included as an acquisition adjustment by the Utility’s outside CPA in 1984. He testified that it was his belief that it was made because of a lack of understanding of regulatory accounting and Statement of Financial Accounting Standards No. 71. Mr. Nixon further testified that '... [a]fter investigation, the amount is merely a balancing entry made by a former CPA in an attempt to comply with the last rate order.' He states further, '... [t]he amount is the difference between a trial balance started by the company in 1983, which only reflects *665 plant added in 1981 and 1982, and the balances established in Order No. 13014.’ He states that the 1280,753 acquisition adjustment was nothing more than a ‘plug entry’ in an attempt to adjust to the original cost study.
Staffs position on this issue is that the Utility, in the prior cases and in this overearnings investigation, has failed to meet its burden to prove that it had any investment in the $280,-753 'plug entry.’ Staff’s view is that an error was made in the original case by not offsetting the $280,753 increase in plant with a matching credit to CIAC. In fact, Mr. Nixon testified that there was no support for investment in the $280,753 except for the original cost study. And as Witness Wood testified, the purpose of an original cost study is to determine the original cost of the total system, not to determine the amount of investment that a Utility has in those costs. The Utility did not produce, in that staff assisted rate case, any records or documentation whatsoever to support that it had any investment represented by that $280,753 adjustment_
In Reedy Creek Utilities v. Florida Public Service Commission, 418 So.2d 249 (1982), the Florida Supreme Court upheld our authority to modify our orders that derives from the nature of our ratemaking powers_ Although the Court noted that this Commission’s inherent power to modify its orders is not without limitation, it stated ...
'An underlying purpose of the doctrine of finality is to protect those who rely on a judgment or ruling. We find that Reedy Creek did not change its position during the lapse of time between orders, and suffered no prejudice as a consequence.’ 418 So.2d 249.
... Sunshine Utilities has not specifically argued the defenses of equitable and collateral estoppel in this case_ The Utility’s position is that the Commission’s only opportunity to evaluate its rate base was when the Utility first came in for a rate case and the Commission issued the final order in that case, Order No. 13014, in 1984.
However, this is not the case. This Commission received jurisdiction over the utilities in Marion County on May 5, 1981. Subsequently, Sunshine Utilities applied to this Commission for certification on September 29, 1981, without benefit of adequate business records.... [T]he Utility did not complete its own minimum filing requirements. At that time, the Commission found it necessary, because of the lack of any reliable records or documentation, to order an original cost study for the Utility to correct its deficiency in basic business records.
[[Image here]]
In a trucking certificate transfer case, while recognizing the Commission’s limited inherent authority to modify its prior orders, the Supreme Court noted that a showing of significant change in circumstances or great public interest would be required to permit a prior Commission order to be superseded. Austin Tupler Trucking, Inc. v. Hawkins, 377 So.2d 679 (Fla.1979) at 681. ...
... There is adequate proof in the record of this hearing that the net book value ‘recognized’ by the Commission was wrong, and that modification of the transfer order is necessary to ensure just and reasonable rates, in the public interest.
To the extent that prior staff audits did not identify the accumulated depreciation adjustment here at issue, such audits were simply in error. Where ... mistake or inadvertence is shown, the Commission must have the power to alter previously entered final rate orders under extraordinary circumstances. Richter v. Florida Power Corporation, 366 So.2d 798 (2nd DCA 1979), at 800....
... There is no question that there was an error made in that Order in not classifying the $280,753 as CIAC. Sunshine Utilities has not changed its position, in reliance on Order No. 13014, beyond the fact that it has become accustomed to earning a return on the $280,-753. It is simply inappropriate to allow this Utility’s ratepayers to pay for an inadvertent mistake made by this Commission in Order No. 13014. The fundamental fact that must be remembered is that Sunshine Utilities had an opportunity, in its first staff assisted rate case, to establish its investment in this $280,-753 amount and it has now had a second opportunity, in this full proceeding, to prove that it had any investment in the $280,753 that has been included in its rate base erroneously. Therefore, we find it appropriate to increase CIAC by a credit of $280,753. (e.s.)