Dora PRIETO, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Civ. A. No. 84–3636.

United States District Court, District of Columbia.

March 13, 1987.

**1188**

Daniel M. Crane, Larkin, Noel & Falk, Washington, D.C., Michael D. Harris, Best, Best & Krieger, Palm Springs, Cal., for plaintiff.

Susan V. Cook, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

By way of an unusual administrative history, this case presents the Court with the responsibility to determine whether the Department of Interior and its Bureau of Indian Affairs (BIA) have fairly treated one of the citizens under their special protection. Plaintiff Dora Prieto, an American Indian, challenges two administrative rulings—one by the Department of Interior's Board of Indian Appeals (IBIA), the other by the Department's Deputy Assistant Secretary for Indian Affairs—that revoked the trust status of land on which she hoped to erect and lease billboards. In a motion for summary judgment, plaintiff asks the Court to restore the land to trust status, or in the alternative to remand this matter to the BIA. The government also has moved for summary judgment.

The motions raise interesting and complex questions about statutory requirements for trust status, the nature of Indians' personal savings, rules of construction for laws pertaining to Indians, and much more. Most of these questions need not be reached in this decision. Upon review of the administrative record in accordance with 5 U.S.C. § 706, the Court finds that the IBIA abused its discretion and acted arbitrarily and capriciously in upholding the revocation of plaintiff's trust status, and further that the Department of Interior is estopped by its own conduct from revoking this trust status. Plaintiff's motion for summary judgment will thus be granted and the government's motion will be denied. The trust status of plaintiff's land will now be restored.

## I

Plaintiff Dora Prieto is an enrolled and alloted member of the Agua Caliente Tribe the Cahuilla Indians of Palm Springs, California, a federally recognized Indian tribe. In 1980, she negotiated the purchase for $46,120 of about 55 acres of land alongside Interstate Highway 10 in Riverside County, California, next to the Agua Caliente Reservation. Plaintiff planned to erect and lease billboards on the land, which is about 100 feet wide and three miles long. When plaintiff bought the land, it was not in Indian trust or restricted status.[1]

Plaintiff applied to the BIA to have this land accepted into trust under the provisions of 25 U.S.C. § 409a (1986),[2] presumably in order that the land be exempt from local taxes as well as from the Highway Beautification Act, 23 U.S.C. § 131, and the

---

1. As a rule, tribal land is held in trust by the United States for the use of the tribes. *See Cherokee Nation, or Tribe of Indians v. Oklahoma*, 416 F.Supp. 838 (E.D.Okl.1976).

2. In most cases, the Secretary of the Interior accepts land in trust pursuant to the general authority of section 5 of the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. § 465. However, the Agua Caliente Tribe rejected the IRA in an election held on December 14, 1934.

California Outdoor Advertising Act, Cal. Bus. & Prof.Code §§ 5201 *et seq.* (West 1974). Section 409a states that:

[w]henever any nontaxable land of a restricted Indian ... is sold under existing law to any ... person or corporation ... the money received for said land may, in the discretion and with the approval of the Secretary of the Interior, be reinvested in other lands selected by said Indian, and such land so selected and purchase shall be restricted as to alienation, lease, or incumbrance, and nontaxable in the same quantity and upon the same terms and conditions as the nontaxable lands from which the reinvested funds were derived, and such restrictions shall appear in the conveyance.

Since 1958, plaintiff had sold 67 acres of trust land in five separate transactions, but most of the revenue from these sales was not deposited in her Individual Indian Money Account, as trust proceeds normally would be.[3] Moreover, instead of using her own money for the purchase of the land in question here, plaintiff borrowed the $46,-120 from a company called the Naegele Outdoor Advertising Company of California. These facts may have raised doubts about whether plaintiff's purchase met the requirements of section 409a, but the purchase was reviewed and approved by the Director of the Palm Springs Field Office of the BIA. Indenture to the United States in trust for appellant was recorded on February 19, 1981.

Meanwhile, plaintiff planned her billboard venture. On September 17, 1980, she entered into a business agreement with the Naegele Company.[4] Plaintiff also sought and obtained Certificates of Zoning Compliance for the land from the Agua Caliente Tribal Council. She sought and obtained approval, including construction permits, from the California Department of Transportation. Finally, she entered into contracts for the use of the property for advertising purposes and built storage facilities on the property.[5]

On November 25, 1981, more than nine months after the land was placed in trust, the County of Riverside filed a "notice of appeal" from the BIA's decision. Riverside County argued that the BIA had not been authorized to take the land into trust because the funds for its purchase were not derived from the sale of other trust or restricted lands as required by section 409a. The county also alleged that its appeal was timely because it had been given inadequate notice of the intention to place the property in trust.

On March 5, 1982, the Acting Area Director of the Sacramento BIA Office informed the county in writing that it did not have the right to appeal the decision. The Director told the county that it had:

neither the rights of protest nor appeal of [his] decision ... Under the circumstances, had I accepted your Notice of Appeal, it would have been considered untimely and the case closed pursuant to 25 C.F.R. 2.10, because your notice was not filed within 30 days of my decision, and the record shows that the County was on notice of the matter.[6]

Nevertheless, although the appeal deadline had run, the Acting Area Director decided

---

**3.** Because the United States in its capacity as trustee is technically the owner of trust land, proceeds from trust sales are initially deposited into the Individual Indian Money Account, which is controlled by the Secretary of the Interior, rather than being disbursed directly to the Indian. *See* 25 C.F.R. § 115.

**4.** Under this agreement, Naegle would construct, manage, and maintain 24 billboards and obtain advertisers. Plaintiff would own the billboards, the cost of which would be financed, however, by Naegele. Naegele also would have the exclusive right to contract with advertisers and to receive all money generated from these contracts. Plaintiff was guaranteed at least

$1,200 annually per sign, plus a percentage of revenues. The total cost to Naegele was $150,-000, payable interest-free by plaintiff. This figure included the $46,120 purchase price of the land.

**5.** In its Statement of Material Facts, the government disagrees with these assertions, without explanation. They appear to be supported by the administrative record, however. *See* Administrative Record at 335–44.

**6.** Letter from Eddie Edwards to James H. Angell, March 5, 1982 (Administrative Record at 492).

that the county's appeal notice would be treated as a complaint requesting reconsideration of the decision, pursuant to 25 C.F.R. § 2.2, and that the decision would, in fact, be reconsidered. The county did not appeal this decision although it was advised of the right to do so.

On March 26, 1982, more than a year after the grant of trust status, the Acting Area Director issued a notice for plaintiff to show cause why the trust status of her property should not be terminated. The notice read:

> I have reviewed your Individual Indian Money Account ... The records reveal that the funds used for the purchase of the subject property were not received from the sale of trust of restricted lands.
>
> You are, therefore, notified that unless proof or evidence is offered tracing such purchase money for the subject property to funds received from the sale of trust or restricted lands, the ... property so acquired is subject to loss of its trust status.[7]

Plaintiff responded to this notice by affidavit on May 13, 1982. She stated that she had sold some 67 acres of trust land between 1958 and 1979, and that under section 409a she had the right to replace those 67 acres with the 55 acres she now acquired. She also made several other legal arguments (*e.g.*, that section 409a does not require the tracing of funds to their ultimate source).

On July 2, 1982, the Acting Area Director determined that plaintiff's land did not qualify for trust status under section 409a. He based his decision on the fact that the $46,120 used to purchase the land did not come from an Individual Indian Money Account but rather from a personal banking account.[8] Plaintiff appealed this decision to the IBIA.

The IBIA issued its decision on March 22, 1983, holding that plaintiff's land purchase ws ineligible for trust status under section 409a.[9] The IBIA examined the legislative history of that provision and found that Congress intended to require a showing that the purchase funds "have been derived from the prior taking or sale. This requirement may ... mean that an individual must trace funds intended for the purchase of replacement property to their ultimate source."[10] The IBIA stated that use of an Individual Indian Money Account was the easiest but not the only, way to satisfy this "tracing" requirement. In any case, the IBIA decided, plaintiff's land could not qualify because the purchase price was obtained on loan from Naegele. However, the IBIA vacated and remanded the Acting Area Director's revocation of trust status in light of newly passed legislation, the Indian Land Consolidation Act, 96 Stat. 2515, "which seems to authorize the BIA, in its discretion, to accept appellant's property in trust, regardless of the prior character of the land or the nature of funds used to acquire it."[11] *See* 25 U.S.C. § 465.

One crucial aspect of this IBIA decision remains to be discussed. Before reviewing the merits of plaintiff's appeal, the IBIA questioned whether the Secretary even had "authority to reconsider and revoke his approval of an acquisition of land in trust." Although the IBIA found that the pertinent regulations did not provide means for reconsideration, *see* 25 C.F.R. § 151, and that "reconsideration should not be undertaken lightly," it held that the decision to reconsider was proper "based on evidence suggesting the possibility that approval may have been obtained through fraud or misrepresentation." Finding no fraud, the IBIA nevertheless decided that:

> [o]nce reconsideration is properly undertaken, due process requires that persons potentially affected by reconsideration be

---

7. Administrative Record at 4.

8. It is unclear whether or not the Acting Director was aware that the actual money was being borrowed from Naegele, although plaintiff had at least that amount in personal assets. His knowledge of this fact, however, is not determinative of today's decision.

9. *Prieto v. Acting Area Director, BIA,* 11 I.B.I.A. 124 (1983) (Administrative Record at 2).

10. *Id.* at 130 (Administrative Record at 8).

11. *Id.* at 132 (Administrative Record at 10).

given an opportunity to be heard. Conclusive evidence that the transaction did not meet the statutory or regulatory requirements then provides grounds for termination of the trust status. It is immaterial whether the initial erroneous decision was made as a result of misrepresentation, mistake, or for some other legally sufficient reason.[12]

Final agency action in this matter was taken on September 26, 1984, when the Deputy Assistant Secretary for Indian Affairs John W. Fritz upheld the revocation of trust status.[13] This lawsuit followed.

## II

The obvious threshold question in reviewing the IBIA decision of March 22, 1983 is whether that Board correctly determined that the Secretary of the Interior, through the Acting Area Director in Sacramento,[14] had authority "to reconsider and revoke his approval of an acquisition of land in trust." [15] As discussed previously, the IBIA: found no statutory authority to do so; noted that plaintiff had detrimentally relied on trust approval; noted that vested rights had already accrued to plaintiff, so that "reconsideration should not be undertaken lightly"; found jurisdiction to reconsider based on possible fraud, but—without discussion—found no fraud present in this case; decided that "due process" nevertheless required full review of the grant of trust status. On its face, this is a most questionable exertion of an agency's adjudicatory powers.

There can be no dispute that administrative agencies have inherent power to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider. *E.g.*, *Trujillo v. General Electric Co.*, 621 F.2d 1084, 1086 (10th Cir.1980); *Albertson v. FCC*, 182 F.2d 397 (D.C.Cir.1950). This power does not depend on statutory authority. *Id.*

Courts have long recognized, however, that this authority is not unlimited. In the *Albertson* case, the Court of Appeals for this Circuit left no doubt that express congressional authority is not a prerequisite to agency reconsideration of a matter. But the court also left no doubt that such reconsideration must be timely. A motion for reconsideration, said the *Albertson* court, "may be filed within the period for taking an appeal. That is so, for within such period jurisdiction over the contested order remains with the [agency]." *Id.* at 399. In the instant case, the BIA itself conceded that the time for appeal had long since run—some eight months before—when Riverside County filed its "notice of appeal," and that the county was on notice of the matter. *See supra* at 1189. Consequently, according to *Albertson*, the agency was without power to reconsider its decision.

The Court of Claims has frequently considered this issue and has declared that agency reconsideration must be timely. In *Dayley v. United States*, 169 Ct.Cl. 305 (1965), for example, the court held that "it is the inherent right of every tribunal to reconsider its own decisions *within a short period after the making of the decision and before an appeal has been taken or other rights vested.*" *Id.* at 308 (emphasis added). Many state courts have come to

---

12. *Id.* at 127–28 (Administrative Record at 5–6).

13. Plaintiff brings many independent challenges to this decision, for example, that the Director was precluded from examining plaintiff's compliance with various factors under 25 C.F.R. § 151.10. The Court need not reach these arguments today because it holds that the prior decision to revoke trust status was itself illegal.

14. At oral argument, the government raised the question of whether the Acting Area Director had even been authorized to accept the land into trust in the first place. It is clear, however, that the Secretary of the Interior specifically delegated such decisions to the Palm Springs Office Director. *See* 43 Fed.Reg. 30132 (delegating authority to Palm Springs Director to grant "approval of the purchase of lands for individual Indians ..."). In any case, the government did not properly raise this issue by way of motion and memorandum.

15. Whether or not this Court has jurisdiction to review the Department of Interior's second refusal to accept the land into trust (on remand) under 25 U.S.C. § 465, *see Florida v. United States*, 768 F.2d 1248 (11th Cir.1985), need not be decided, because the Court finds invalid the prior revocation of trust under 25 U.S.C. § 409a.

the same conclusion. In *Schultze v. Montgomery County Planning Board*, 230 Md. 76, 185 A.2d 502 (1962), for example, the court held that a planning board had exceeded its authority in reversing its original disapproval of a subdivision plan. The court stated that:

> while the reversal from the original disapproval to approval of the preliminary plan was based on the existence of mistake or inadvertence ... the disapproval of the final plan amounted to a mere change of mind on the part of the board as it is apparent from the record that it was not founded upon fraud, surprise, mistake or inadvertence, or indeed upon any new or different factual situation. Although reason and authority lead to the conclusion that when such facts are present, an administrative body acting in a quasi-judicial capacity has the right to correct errors in its decisions, even in the absence of provisions for reconsideration, the power of such a board is not one which may be exercised arbitrarily, but only where there is justification and good cause.

185 A.2d at 505. In *Duvin v. Dept. of Treasury, Public Employees' Retirement System*, 76 N.J. 203, 386 A.2d 842 (1978), the court held that a retirement board had authority to reconsider its grant of an early retirement allowance, provided that power would be invoked for good cause and exercised reasonably, and that the applicant had sought reconsideration reasonably promptly. And in *Peoples Gas System, Inc. v. Mason*, 187 So.2d 335 (Fla.1966), in finding that an agency had waited too long to reconsider its approval of a territorial gas service agreement, the court commented that:

> [o]rders of administrative agencies must eventually pass out of the agency's control and become final and no longer subject to modification. This rule assures that there will be a terminal point in every proceeding at which the parties and the public may rely on a decision of such an agency as being final and dispositive of the rights and issues involved therein. This is, of course, the same rule that governs the finality of decisions of

courts. It is as essential with respect to orders of administrative bodies as with those of courts.

*Id.* at 339.

■ The rule established by cases such as these makes it completely clear that the Secretary exceeded his authority in reconsidering and in revoking the trust status of plaintiff's land. First, by the Acting Area Director's own admission, the time for filing an appeal of the decision to grant trust status had long since run out. According to the Department's *"mandatory* time limit" for such appeals, the notice of appeal must be filed with the deciding official within 30 days, and with the Area Director within 30 days thereafter. 25 C.F.R. § 2.10. In the instant case, the county's purported "notice of appeal" was filed more than nine months after the land was placed in trust. The Acting Director may have changed this "appeal" into a new "complaint" but this new label in no way decreased the unfairness to plaintiff in reopening a final decision, or lessened the harm to society generally in its need for repose. *See Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 291 (D.C.Cir. 1971).

A second factor arguing against the IBIA's authority to change its course is that, by the IBIA's own admission, "legally recognized property interests [arose] through the Secretary's approval" of trust status. Presumably, this included "an enforceable expectation that ... [her] allotments would be tax exempt while held in trust by the United States." *County of Thurston v. Andrus*, 586 F.2d 1212, 1220 (8th Cir.1978). Obviously, an agency is much freer to change a decision when the change will not snatch back vested rights. Third, in anticipation of her use of the land in trust, plaintiff had built and contracted to lease storage facilities on the property, and had entered into a financing agreement for her billboard enterprise.

But perhaps the most compelling argument against upholding the Secretary's reconsideration is its use of the pretext of fraud as a way to bootstrap *de novo* review of the entire trust issue. The IBIA found

that the decision to reconsider was based "on evidence suggesting the possibility that approval may have been obtained through fraud or misrepresentation." Its only support for this bald statement, however, was a short footnote quoting the Palm Springs Field Office Director as saying that plaintiff had represented her purchase funds as "traceable land sale funds."[16] But how such a representation could have been belatedly labeled "fraudulent" is a mystery. After all, there was at the time no clear interpretation of the tracing requirement in section 409a, and plaintiff had and still has today extremely persuasive arguments that her purchase *does* meet the 409a requirements. Borrowed or not borrowed, from an Indian account or not, these funds may well indeed have been "traceable." In fact, the IBIA decided without discussion that no fraud was present. It simply assumed that the mere intonation of "fraud" would authorize it to withdraw the "legally recognized property interests" it had granted only nine months before. The IBIA's lofty concerns for "due process" apparently extended only as far as Riverside County's due process— even though the Area Director had conceded that the county knew of the trust decision and chose not to appeal. Due process for plaintiff, an American Indian who comes under the special protection of this nation's laws and this particular Department's regulations, apparently went by the wayside.

In response, the government argues that the original grant of trust status was void *ab initio* and thus could be reviewed at any time. That is, the government argues that it was not "revoking" anything, since no legal action had been taken. This argument has some superficial appeal, in light of cases limiting agency reconsideration in cases where there has been no "showing of error" in the original consideration. *See McAllister v. United States*, 3 Cl.Ct. 394, 398 (1983). But on further inspection, the argument falls apart. First, prior to this litigation the Department had consistently

taken the position that it was deciding whether or not to "revoke ... approval" of the acquisition in trust,[17] and that the question was whether the property was "subject to loss of its trust status."[18] If the earlier trust decision was void *ab initio*, the Department did not discover that fact until it was convenient to do so in this litigation.

Second, an analogous view of what constitutes "error" sufficient to justify overturning a judgment is found in Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) states that a court may reconsider a final judgment for any of six reasons, including mistake, fraud, or under Rule 60(b)(4), that the original judgment was void. But these provisions are by no means an authorization for courts to reverse final judgments at every change of mind. As the Third Circuit has noted, quoting the Supreme Court:

> A judgment may indeed by void, and therefore subject to relief under 60(b)(4), if the Court that rendered it lacked jurisdiction of the subject matter or the parties or entered 'a decree which is not within the powers granted to it by the law.' *United States v. Walker*, 109 U.S. 258, 265–67 [3 S.Ct. 277, 282–83, 27 L.Ed. 927] ... By contrast, *a judgment is not void and is therefore not within the ambit of 60(b)(4) simply because it is erroneous*, ... *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374–78 [60 S.Ct. 317, 318–20, 84 L.Ed. 329].

*Marshall v. Board of Education*, 575 F.2d 417 (3d Cir.1978) (emphasis added).

The *Marshall* reasoning is equally applicable to the instant case. The Department of Interior now portrays the Acting Area Director's determination of trust status as so wrong as to be void at its inception. In fact, it would be far from clear even to this Court at this late date, were it required to reach the question, whether plaintiff had satisfied the requirements of section 409a —whether the Director's first decision was

---

**16.** Administrative Record at 6.

**17.** Administrative Record at 5.

**18.** *Id.* at 4.

not only not void, but not even in error. Without going into unnecessary details, suffice it to say that plaintiff makes strong and sophisticated arguments that the revocation of trust status was the "erroneous" action, an action that frustrated the very purposes of section 409a, that violates the spirit of this nation's ostensibly generous dealings with its Indians, that contradicts basic rules of trust law.

The Department of Interior's "void ab initio" theory would render meaningless even those agency decisions that purport to grant vested property interests. It would mean that those decisions would be subject to reversal at the belated suggestion of any outside party, even an outside party who had ample chance to voice its opinion in the original proceedings. It would mean that those supposedly vested interests could be taken back at the agency's change of mind. The argument is an invitation to judicial approval of the most arbitrary agency reversals. In this case, under these circumstances, the Court declines to accept such an invitation, and it hereby finds the IBIA's revocation of trust status, which affirmed the Area Director's reversal of position, to have been an arbitrary and capricious act in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

### III

■ The next issue is whether the Department of Interior may be equitably estopped by its actions from revoking the trust status of plaintiff's land. Both sides correctly point out that equitable estoppel is usually not applied against the government. *See Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The Court of Appeals for this Circuit has decided that a plaintiff must establish six elements in order to prevail on an estoppel claim against the government: (1) a false representation by a government official, acting within the scope of his duty; (2) intent that the party to whom the misrepresentation is made will act upon it; (3) ignorance of the true facts

by that party; (4) detrimental reliance; (5) a showing of injustice; and (6) lack of undue damage to the public interest. *See International Organization of Masters, Mates & Pilots v. Brown,* 698 F.2d 536, 551 (D.C.Cir.1983). Plaintiff in the instant case has satisfied this burden.

First. The Department of Interior and its officials made false representations to plaintiff in respect to her ability to obtain trust status. With at least the tacit encouragement of the BIA, plaintiff withdrew money from her Individual Indian Money Account and deposited it in a commercial account, but BIA officials never told plaintiff that such an action would forfeit her right to acquire replacement trust property under section 409a.[19] Ultimately, it was this transfer of funds that led the Acting Area Director to revoke trust status. *See* Administrative Record at 5. Moreover, the Department made false representations to plaintiff when it awarded trust status to her land, and then nine months later, without cause or justification, took that trust status back.

Second. The Department obviously intended that plaintiff act on the basis of these misrepresentations. The BIA already had determined that the "highest and best use" of such land would be for outdoor advertising.[20] Two BIA officials— Richard McDermott, its Palm Springs Office Director, and Kermeth Engel, that office's Realty Officer—recommended approval of the land into trust with full knowledge that plaintiff would begin to conduct her billboard business. Essentially, the Department told plaintiff on February 19, 1981 that "this land now has protected trust status; you may plan your business accordingly without fear, because you have protected property interests."

Third. There can be no dispute that plaintiff was ignorant of the fact that her actions, such as the transfer of funds from one account to another, would forfeit her right to obtain trust status for the land in question.

---

**19.** *See* Administrative Record at 523–30; 25 C.F.R. § 115.6.

**20.** *See* Administrative Record at 953–57, 984, 1325.

Fourth. Plaintiff has shown detrimental reliance on the Department's misrepresentations. Simply put, she withdrew money from her Individual Indian Money Account with the encouragement of the BIA. She then bought property whose worth depends in great degree on its status in trust. Once the land was accepted into trust, she proceeded with her plans to conduct outdoor advertising, including entering into a detailed agreement with the Naegele Company and built storage structures on the property.

Fifth. It needs no further discussion to demonstrate that plaintiff has made out a showing of injustice, for all the reasons discussed in Part II, *supra*. Sixth and finally, the government can hardly prove any undue damage to the public interest from the mere restoration of true status for a relatively small parcel of roadside land. As plaintiff has already shown, she intends to follow all proper legal procedures and obtain all necessary permits for her billboard venture. *See supra* at 1189. Nor, obviously, will the public interest be unduly burdened by the Court's decision today.

Whether it is asserted against a private party or the government, the essence of equitable estoppel is fairness. In the instant case, for the reasons discussed both in this section and in Part II, *supra*, the Department of Interior has dealt far less than fairly with plaintiff. Were plaintiff a typical American citizen, the Department's treatment might still not be defensible. But plaintiff is an American Indian, ostensibly a ward of the United States in some respects (for better or for worse), and the Department has a solemn duty "to improve the economic well-being of Indian people through proper and efficient resource use." *Coomes v. Adkinson*, 414 F.Supp. 975, 986 (D.S.D.1976). The Department, and particularly the BIA, are obligated to keep in mind that "tribal use and development of tribal trust property ... is one of the main vehicles for the economic self-development necessary to equal Indian participation in American life." *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 665 (9th Cir.1975); *see* 25 U.S.C. § 450f. In

this light, the Department's actions toward plaintiff have been anything but fair and equitable, and may therefore be estopped from revoking the trust status of her land.

## IV

In conclusion, the Court hereby concludes that, first, the Department of Interior's revocation of trust status for the land in question was arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Alternatively, the Court finds that the Department is estopped by its actions from revoking that status. An appropriate order accompanies this Memorandum.

## ORDER

Upon consideration of the motions for summary judgment, the oppositions thereto, the administrative record, and the entire record herein, it is this 13th day of March, 1987

ORDERED that defendants' motion for summary judgment be and it is hereby denied; and it is further

ORDERED that plaintiff's motion for summary judgment be and it is hereby granted; and it is further

ORDERED that judgment be and it is hereby entered in favor of plaintiff; and it is further

ORDERED that the trust status of the parcel of land in question in this case, approximately 100 feet wide and three miles long, adjacent to Interstate Highway 10 and the Agua Caliente Reservation in Riverside County, California, be and it is hereby restored, with all the attached rights and entitlements.