VAN NORTWICK, J.
In this rate-making proceeding, Florida Cities Water Company, a water and sewer utility company, appeals a final order of the Florida Public Service Commission entered after remand by this court in Florida Cities Water Co. v. State of Florida, Public Serv. Comm’n, 705 So.2d 620 (Fla. 1st DCA 1998) (Florida Cities I). Florida Cities argues that the Commission erred in calculating the “used and useful” portion of Florida Cities’ wastewater treatment plant to be included in the utility’s rate base. We find the Commission’s order supported by competent, substantial evidence, and affirm.
In Florida Cities I, we held that the Commission, in using average annual daily flow[1] in the numerator of the used and useful computation, rather than peak or maximum month average daily flow, had made “a considered break with agency policy” which was unsupported by adequate explanation or evidentiary support in the record. Florida Cities I, 705 So.2d at 625-26. We directed that, on remand, the Commission give a reasonable explanation, supported by record evidence, for the change. Id. at 626. On remand, the Commission held an evidentiary proceeding at which expert witnesses and personnel from the Commission and the Florida Department of Environmental Protection testified.
In setting rates, the Commission must consider, among other things, “a fair return on the investment of the utility in property used and useful in the public service.” § 367.081(2)(a)l, Fla. Stat. (1999).[2] The parties agree that the used and useful portion of the utility’s wastewa-ter treatment plant is properly determined by applying a percentage derived from comparing the customer demand or load placed on the plant (expressed in terms of the flow of wastewater over a certain time period) with the treatment capacity of the plant. There is also no disagreement on remand that the capacity of the plant is 1.25 million gallons per day based on annual average daily flow, as stated in the permit issued by the Florida Department of Environmental Protection. The dispute here concerns what measurement of customer demand should be used in the numerator of the used and useful percentage, when the capacity (the denominator of the calculation) is stated in terms of annual average daily flow.
Florida Cities argues that the average daily flows in the maximum month should be used as the numerator in the used and useful percentage, and that, as a result, the plant should be found to be 100% used and useful for rate-making purposes. Florida Cities contends that, even though the capacity of its plant is measured in annual average daily flow, unless the customer demand based on maximum month average daily flow is used in calculating rate base, the capacity of the plant to handle peak flows will not be recognized for rate-making purposes. In that event, the utility asserts that it will not be allowed to recover the cost of its investment in rate base, resulting in confiscatory rates. See Duquesne Light Co. v. Barasch, 488 U.S. 299, 307, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989); United Telephone Co. v. Mayo, 345 So.2d 648, 653 (Fla.1977).
*312 Following the evidentiary hearing, the Commission found that the record supported using annual average daily flow in the numerator, rather than maximum month average daily flow, in calculating the used and useful percentage for the wastewater treatment plant. In the final order, the Commission explained its findings as follows:
[W]e find that the record supports the matching (use of same units over the same time) of the flows in the numerator with the same flows used in the plant’s permitted capacity (the denominator). In this case, the utility’s design engineer requested AADF [annual average daily flow] and this was what was authorized by DEP. Further, where the plant is permitted based on AADF [annual average daily flow], you cannot determine what percentage of the plant is used and useful by looking at only one month. You must look at the whole year. This is the only way to obtain a valid measure of what percentage of the utility’s plant is used and useful in the public service. The resultant flow and design capacity as applied in the used and useful equation yields a 79 percent used and useful percentage for this utility.
The Commission also found that using annual average daily flow in the numerator of the calculation does not ignore average daily flow in the peak month. Logically, an annual average amount includes the month with the peak flows, as well as the 11 other months. Further, the record reflects that the plant has the capacity to handle peak flows substantially greater than 1.25 million gallons per day. The engineer who designed the utility’s waste-water treatment plant testified that the plant was designed with a peak flow hydraulic capacity of up to 2.5 million gallons per day and a peak flow treatment capacity of 130% to 150% of the permitted capacity. Thus, the Commission concluded that, when plant capacity is measured on an annual average basis, the percentage of the capacity that is used and useful must also be measured on an annual average basis.
In making its findings, the Commission accepted the testimony of three professional engineers, including an engineer from the Florida Department of Environmental Protection, who opined that, in the used and useful computation, the time period used as representing customer demand in the numerator (whether annual average, maximum month or peak flow average, or three month average) should be the same as the time period used in expressing the permitted design capacity in the denominator; and that the use of maximum month average daily flow to measure the load placed on the permitted plant, when the plant capacity is measured in annual average daily flow, would overstate the percentage of the plant treated as used and useful for rate-making purposes.
In reviewing Commission decisions, we do not reevaluate the evidence presented to the Commission. Our role is to examine the record only to determine whether the order on review meets the essential requirements of law and whether the agency had available competent substantial evidence to support its findings. Polk County v. Florida Public Serv. Comm’n, 460 So.2d 370, 373 (Fla.1984). If there is competent substantial evidence to support the order, we are obligated to affirm. Fort Pierce Utils. Auth. v. Beard, 626 So.2d 1356 (Fla.1993).
The Commission’s order under review articulates the reasons for its decision and the evidence that supports that decision. Unlike Florida Cities I, here the Commission has given a reasonable explanation, supported by record evidence, for using annual average daily flow, rather than maximum month average daily flow, in computing what portion of the wastewater treatment plant is used and useful in the public service. See Florida Cities I, 705 So.2d at 626. Florida Cities, in effect, asks the court to adopt the utility’s view of the engineering evidence, ignore the evidence that supports the Commission’s po *313 sition, and substitute this court’s judgment for that of the Commission. That, of course, is not our role. See § 120.68(7)(b), Fla. Stat. (1999); McCaw Communications, Inc. v. Clark, 679 So.2d 1177, 1178 (Fla.1996). Because competent substantial evidence supports the Commission’s order, and the order complies with the essential requirements of the law, we affirm.
JOANOS AND LAWRENCE, JJ., CONCUR.

. For further elaboration on the terms "used and useful,” peak month or maximum month average daily flow, and average annual daily flow, see the opinion in Florida Cities I.

. The provisions of chapter 99-319, Laws of Florida, do not apply to this rate case. See ch. 99-319, § 9, Laws of Florida.